AGNES D. ENOS *et al.*

*v.*

JAMES N. BUCKLEY.

1. LIMITATION ACT OF 1839—*saving clause as to married women abrogated by Married Woman's act.* Since the passage of the Married Woman's act of 1861, the saving clause in favor of married women in the Limitation law of 1839 has no force, and the statute since that time applies against a married woman equally as against an unmarried woman, without regard to whether the property of the unmarried woman be strictly, in legal contemplation, before the passage of the act, her separate property or not, and without regard to the time of its acquisition, whether since or before the passage of the act, and whether before or during coverture.

2. Where land was acquired by a woman in 1842, by devise from her father, and she married in 1846, and in June, 1865, a party went into possession of the same under claim and color of title, and he and those succeeding to his claim and color of title, while in possession, paid all the taxes thereon for seven successive years before suit brought by her to recover the land, it was held, that the action was barred under the Limitation law of 1839.

3. SAME—*how defeated.* The limitation of 1839 might have been prevented by the payment of the taxes by the owner, and the outstanding title in the husband formed no impediment to their payment since the act of 1861. The taxes should have been kept paid, not on any one's particular interest in the land, but on the whole land.

WRIT OF ERROR to the Circuit Court of Menard county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. W. H. HERNDON, for the plaintiff in error.

Mr. T. W. McNEELY, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the court:

This was an action of ejectment, by Agnes D. Enos, and Zimri A. Enos, her husband, against James N. Buckley, commenced in the circuit court of Menard county, May 28, 1878, to recover possession of the east half of the south-east quarter and the north-west quarter of the south-east quarter of section 32, township 19, range 7 west of the third principal meridian, situated in Menard county in this State, wherein there was judgment for the defendant, and the plaintiffs bring the case here by writ of error.

The title shown on the part of the plaintiffs was that George Trotter was the patentee of the south-east quarter of said section 32 under a patent issued to him by the United States on November 1, 1839; that on or about May 18, 1842, said George Trotter died, leaving a will whereby he devised the lands in controversy, among others, in fee, in equal parts to his four infant children, one of whom was Agnes D. Trotter, now Agnes D. Enos, one of the plaintiffs. The will was duly probated. In 1853, by a decree in a partition proceeding between the aforesaid devisees, the lands in controversy were set off and allotted to the said Agnes D. Trotter, then Agnes D. Enos, in severalty, she having been married to Zimri A. Enos, June 10, 1846.

On the part of the defendant there was shown in evidence a tax deed from the sheriff of Menard county to one A. K. Riggin, dated November 4, 1848, under a tax sale on June 30, 1846, for a quarter section of land, with this simple description merely, to-wit: "South-east quarter of section thirty-two, in township nineteen, range seven, containing one hundred and sixty acres." A general warranty deed dated June 2, 1865, from Riggin to one Bracken, of the said southeast quarter of section 32, described in the declaration, with a full and proper description of it, together with other lands, for the stated consideration of $4725. A general warranty deed, dated February 16, 1869, from Bracken to James

Buckley, of the lands in controversy, properly described, together with other lands, the consideration stated being $7500. Also, a general warranty deed dated April 9, 1878, from Buckley, the defendant, to J. N. Rutledge, of the lands in controversy, properly described, with other lands, for the stated consideration of $5000, Buckley to keep possession of the land until March 1, 1879, by reservation in the deed.

It was further shown that Riggin paid all taxes assessed on the land in controversy for the years from 1846 to 1864, both inclusive; that Bracken paid all the taxes so assessed for the years 1865, 1866, 1867 and 1868; that Buckley, the defendant, paid all the taxes so assessed for the years from 1869 to 1877, both inclusive, and that Rutledge paid such taxes for the year 1878.

It was further shown that the land in controversy was vacant and unoccupied until in the year 1858 or 1859, further than that it was fenced in, in 1856, as we understand, by adjoining owners fencing their own lands, and the pasturage of it was enjoyed.

In 1858 or 1859 Riggin moved a house on the land, broke up the land in 1859 or 1860, and had a tenant in the house and upon the land from 1860 or 1861 to 1865, ever since which time the land has been in cultivation and in the actual possession respectively of the grantees in the several deeds mentioned.

It is objected to the tax deed offered in evidence that it is void for any purpose on account of the uncertainty of what quarter section it is which the deed purports to convey, it being merely described as E. ½ of S.E. ¼ of section 32, in township 19, range 7, the deed not stating on what side of any base line or meridian is the township or range, or in what State or county the land is situate. Without stopping to consider as to this, we are of opinion that, laying aside this tax deed, a good defence is made out by the payment of taxes on the land by the defendant and those under whom he claims for

seven successive years while in actual possession of the land under claim and color of title made in good faith.

There can be no doubt, under our decisions, that at least the deed from Riggin to Bracken was color of title, as also that from Bracken to the defendant, and that the claim of title thereunder was made in good faith, and there was payment by the defendant under his deed, and while in the actual possession of the land, of all taxes assessed against it for seven successive years. Our statute, in force since 1839, provides that " every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall also, during said time pay, all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title."

There is an exception in the statute that it shall not extend to lands held by a *feme covert*, provided she should commence an action to recover such lands within three years after her disability of coverture should cease to exist.

It is insisted that the plaintiff, Mrs. Enos, comes within this exception.

It was held by this court, in *Castner et al.* v. *Walrod*, 83 Ill. 171, that the saving clause in favor of married women in the Limitation law was abrogated by the Married Woman's act of 1861, as the two acts were so inconsistent that they could not stand together.

The Married Woman's act of 1861 provided " that all the property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith, etc., shall, notwithstanding her marriage, be and remain during coverture her sole and separate property, under her sole control, and be held, owned, possessed and

enjoyed by her the same as though she was sole and unmarried, and shall not be subject to the disposal, control or interference of her husband," etc.

It is contended that this Married Woman's act does not touch the present case of Mrs. Enos ; that there are three classes of cases in that law, in no one of which is her case embraced : 1, all property belonging to any married woman as her sole and separate property ; that this refers to what is well known in the chancery courts of England and this country as a married woman's separate estate, and which exists under some instrument wherein the husband's marital right is excluded, and that Mrs. Enos' land is not that species of property, but being her general estate. That the second class respects property which any woman thereafter married owns at the time of her marriage, which could not embrace the present case, as Mrs. Enos was married before, in 1846. That the third class is property which any married woman acquires during coverture, whereas the property here was acquired by devise in 1842, four years before the marriage, and that as respects the second and third cases, the act is prospective in its operation. And that such should be necessarily the limitations of the statute, inasmuch as the husband by the marriage acquires a freehold estate in the wife's lands during their joint lives which it would not be within the power of an act of the legislature to divest.

The same condition existed in the case of *Castner et al.* v. *Walrod,* in the respect of the land of the married women not being properly their sole and separate property, and of its being owned by them at the time of the passage of the act of 1861, and for a long time previously.

Whatever force there may be in these suggestions now made, we regard the above cited case as a decision against their validity, and we must adhere to that decision as settling the rule upon this subject.

We regard, then, under the decision in the case of *Castner et al.* v. *Walrod,* that since the passage of the Married Woman's

act of 1861, the saving clause in favor of married women in this Limitation law has no force, and that the statute since that time applies against a married woman equally as against an unmarried woman, without regard to whether the property of the married woman be strictly in legal understanding, before the passage of the act, her separate property or not, and without regard to the time of its acquisition, whether since or before the passage of the act, whether during or before coverture.

It is true that in the *Castner case* it appears that the freehold estate in the husbands had become barred by the running of the Statute of Limitations against it prior to the passage of the act of 1861, so that such estate in their husbands formed no obstacle to the bringing of an action for the possession by the married women at any time after the act of 1861; and it was there said they were bound to bring their action within seven years after the act of 1861, or their right would be barred.

That feature does not exist in the present case, leaving out of view the tax deed to Riggin as color of title, and taking the deed from Riggin to Bracken of June 2, 1865, as the first color of title; and the seven years' payment of taxes under the latter deed so as to bar the estate of Enos, the husband, would not have run until the year 1872, and the present suit was brought within seven years thereafter. In the *Castner case* it might have been important that the married women should have had seven years, after the time their husbands' estate became barred, within which to bring their action for possession, such time being the commencement of their ability to maintain the action, as another section of the Statute of Limitations was there involved, to-wit, the 4th section, of seven years' possession under a title deducible of record from some public office or officer. The present case involves a different section, section 6, of seven years' payment of taxes with color of title and possession. To prevent the acquirement of the bar under this last section it was only necessary to pay the taxes.

The outstanding estate in the husband here formed no impediment to the payment of taxes any time after the act of 1861. The taxes should have been kept paid,—not on any one's particular interest in the land, but on the whole land. As between the owner of the life estate and the reversioner it is undoubtedly the duty of the former to pay the taxes. But the statute requires the payment of the taxes on the entire interest in the land, no matter how it may be divided and owned, and if they be not kept paid the whole estate in the land may become barred, as against the owners, under the statute. If, by reason of the husband's estate in the land, the wife might not have been able to derive from it the means to pay the taxes, she might otherwise, under and in consequence of the Married Woman's act of 1861, have become possessed of such means, and which she would not, except for that act. It was adverted to as a consideration inducing the decision in the *Castner* case, that since the passage of the above named act a married woman could use her own money to pay taxes, and thus prevent the acquirement of a bar by the payment of taxes by another.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*