254:76 Fed 930

## MARY JANE NELSON

*v.*

## ADAM DAVIDSON.

*Filed at Ottawa November 1, 1895—Rehearing denied March 13, 1896.*

1. LIMITATIONS—*adverse possession against remainder-man—outstanding life estate.* Possession for seven years by one claiming under a deed purporting to convey an estate in remainder, and sufficient to constitute color of title, coupled with payment of taxes for the same period, will bar the estate in remainder, notwithstanding the existence of the outstanding life estate, where the remainder-man claiming title was under no disability.*

2. SAME—*what is sufficient to constitute color of title.* A deed purporting, on its face, to convey the title of land to the grantee is sufficient to constitute claim and color of title in such grantee, although the title, when traced back to its source, is not legal and valid.

*The subject of adverse possession against remainder-men and owners of future estates is considered in an extensive note to *Gindrat* v. *Western Railway of Alabama,* 19 L. R. A. 839.

APPEAL from the Circuit Court of Marshall county; the Hon. THOMAS M. SHAW, Judge, presiding.

EFFIE HENDERSON, for appellant:

The act of partition does not create a new title or give a new possession. *Fleetnor* v. *Driscoll*, 97 Ind. 27; 12 Black on Judgments, sec. 660; *Christy* v. *Spring Valley*, 68 Cal. 73.

This land was set off to John Brown in right of his wife, he being tenant by the curtesy consummate, and his estate thus made matter of record. A judgment in partition must be read with reference to the pleadings. All must be taken together to interpret the judgment or decree. *Christy* v. *Spring Valley*, 68 Cal. 73; *Gage* v. *Goudy*, 141 Ill. 215; *Fleetnor* v. *Driscoll*, 97 Ind. 27.

This decree was a substantial compliance with the statute—setting off John Brown's curtesy to him. *Knapp* v. *Gass*, 63 Ill. 495.

The letters of guardianship were void for want of jurisdiction, and may be impeached in any collateral proceeding. The appointment must be made in the county where the ward resides. 9 Am. & Eng. Ency. of Law, 94, 95; Rev. Stat. chap. 64, sec. 2.

The proceedings for sale were void for want of jurisdiction. Application must be made in the county where the ward resides. *Loyd* v. *Malone*, 23 Ill. 42; *Spellman* v. *Dowse*, 79 id. 66.

No title passes till the sale is approved. *Musgrove* v. *Conover*, 85 Ill. 374.

A guardian's sale without confirmation is void. *Young* v. *Keogh*, 11 Ill. 625; *Musgrove* v. *Conover*, 85 id. 374; *Young* v. *Loraine*, 11 id. 642; *Rawlings* v. *Bailey*, 15 id. 173; *Chapin* v. *Curtenius*, id. 427; *Ayers* v. *Baumgarten*, id. 444; *Young* v. *Dowling*, id. 482; *Miller* v. *McMannis*, 104 id. 427; *Cooter* v. *Dearborn*, 115 id. 509.

The theory of sales of this character is that the court is itself the vendor. *Tooley* v. *Kain*, 1 S. & M. 522.

This court has twice held a void guardian's deed not to be color of title made in good faith. *Cooter* v. *Dearborn,* 115 Ill. 509; *Rawlings* v. *Bailey,* 15 id. 173.

WINSLOW EVANS, for appellee:

Any deed purporting on its face to convey title, no matter on what it may be founded, is color of title. *Dickenson* v. *Breeden,* 30 Ill. 279; *Holloway* v. *Clark,* 27 id. 484; *Watts* v. *Parker,* id. 224; *Woodward* v. *Blanchard,* 16 id. 433; *Hinckley* v. *Green,* 52 id. 223; *Fagan* v. *Rosier,* 68 id. 84; *Dawley* v. *Van Court,* 21 id. 460.

Imperfections and irregularities of any part of the chain by which color of title is derived would not of itself be regarded as evidence of the want of good faith by the holder of such color. *Dawley* v. *Van Court,* 21 Ill. 459.

A deed regular upon its face is good color of title, and bad faith or fraud on the part of the grantee is not to be presumed, in the absence of proof. *Morrison* v. *Norman,* 47 Ill. 477.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was an action of ejectment, brought by Mary J. Nelson, against Adam Davidson, to recover lot 3, of the north half of the north-east quarter of section 26, township 12, north of range 8, east of the fourth principal meridian, in Marshall county. The defendant pleaded not guilty, and the case being submitted to the court for trial without a jury, the court found the defendant not guilty and rendered judgment against the plaintiff for costs. From that judgment the plaintiff has appealed to this court.

The eighty-acre tract of land of which lot 3 forms a part, was, with other lands, entered and purchased from the United States by Joseph Thompson, but before a patent was issued to him he died, leaving, among other heirs-at-law, Margaret Thompson, the mother of Mary J. Nelson, the plaintiff in this case. In a partition proceeding subsequently had, the eighty-acre tract, with other

lands, was partitioned and set off in severalty to Margaret Thompson, (then Margaret Brown,) she having intermarried with John Brown.   After becoming seized of this tract as heir of Joseph Thompson, and about the year 1845, Margaret Brown died, leaving surviving her husband, John Brown, and Mary J. Nelson, her only child and heir-at-law.   It seems that the parties then resided in Tazewell county, and the plaintiff being a minor, the county court of Tazewell county appointed John Brown her guardian.   While they were residing in that county, in the year 1852, John Brown, as guardian for Mary J. Nelson, filed a petition in the circuit court of Marshall county, praying for an order and decree of that court authorizing and directing him to make sale of the title and interest of Mary J. Nelson in all of the north-east quarter of section 26, township 12, etc., and in that proceeding a guardian *ad litem* was appointed for the minor, and the cause was referred to a master in chancery, and on the final hearing a decree was entered authorizing and directing the sale of the premises described in the petition, in pursuance of the prayer thereof.   This order or decree was entered at the October term of 1852, and on the 25th day of November following, John Brown, as the guardian of Mary J. Nelson, conveyed to Thomas Keller and Justin L. Miner the north-east quarter of section 26, in township 12, above mentioned.   This deed recited the filing of the petition by John Brown, as guardian for Mary J. Nelson, for the sale of the premises described; also the order or decree of the court authorizing and directing him to sell the premises as such guardian; the advertising of the premises for sale by posting written notices in three of the most public places, etc., for twenty days prior to the sale, and that Keller and Miner were the highest bidders; that they bid $300 for the tract, and that it was thereupon struck off to them.   The deed was duly acknowledged by John Brown, as guardian for Mary J. Nelson, and recorded December 25, 1852.   By a deed

160—17

dated November 1, 1854, Thomas Keller and wife con-
veyed to Justin L. Miner the north half of the quarter
section above described, and by warranty deed dated
February 27, 1867, Justin L. Miner conveyed the same
tract to Catharine Mannock. Subsequently, Catharine
Mannock, who through divorce proceedings had resumed
the name of Miner, her first husband's name, died seized
of the eighty-acre tract above mentioned, and in parti-
tion proceedings instituted by her heirs at the January
term, 1879, of the circuit court of Marshall county, the
eighty-acre tract was divided into lots 1, 2 and 3—lot 1
being partitioned and set off to Justin L. Miner and Min-
nie Hull, lot 2 to Catharine Beebe, and lot 3 to Sophronia
Miner, Catharine Miner and Margaret Miner. By a quit-
claim deed dated January 30, 1882, Carrie S. Wayne, who
is shown by the evidence to be the same person to whom
lot 3 was partitioned under the name of Catharine Miner,
and G. W. Wayne, her husband; Maggie Sampson, shown
by the evidence to be the same person to whom lot 3 was
set off under the name of Margaret M. Miner, and Alfred
Sampson, her husband; and Mary C. Sampson, being
shown by the evidence to be the same person to whom
lot 3 was partitioned under the name of Sophronia Miner,
and Charles C. Sampson, her husband, conveyed lot 3 to
Adam Davidson, the defendant. The evidence shows
that Adam Davidson went into possession of lot 3 imme-
diately after the execution of the deed thereof to him,
and that he continued in possession of the premises and
claimed to own them under that deed up to April 26, 1893,
the date of the commencement of this suit,—being over
seven years,—and that during all that time he paid the
taxes assessed against the lot. It seems to be conceded
that John Brown, upon the death of his wife, in 1845,
became tenant for life of the land in question by curtesy
consummate. John Brown died November 21, 1892.

It is claimed by the plaintiff that the proceedings in
the circuit court of Marshall county by the guardian of

Mary J. Nelson, and the deed executed by her guardian in pursuance of the decree rendered in those proceedings, were void for the reason, first, that the proceedings were not in the county where the ward resided; and second, because there was no approval or confirmation of the deed.   On the part of the defendant it is claimed, that even if that be so, the deed from Carrie S. Wayne and others to the defendant constituted claim and color of title made in good faith, and that by reason of seven years' possession and payment of taxes the defendant, under the provisions of section 6 of the Statute of Limitations, acquired a title to the land paramount to that of the plaintiff.   The questions raised by this latter contention constitute the only matters which it will be necessary for us to consider in this case.

The position assumed by the plaintiff is, that as John Brown was entitled to a life estate in the land as tenant by the curtesy, the Statute of Limitations could commence to run, as against her title, only upon the death of the life tenant.

It should be noticed that even if the guardian's deed executed by John Brown is to be regarded as void for the reasons above stated, the chain of conveyances shown by the evidence is sufficient to establish the fact that the defendant entered into and holds possession of the land, claiming to be seized of the title formerly vested in the plaintiff.   His title and possession were not in privity with the life tenant, but claiming, as he did, through the guardian's deed and *mesne* conveyances, the title which he claims is that of the tenant in remainder herself.   The question presented then is, whether possession by the defendant adverse to the tenant in remainder, for seven years, coupled with the payment of taxes for that period, is sufficient to bar the estate in remainder, notwithstanding the existence of an outstanding estate for life.

The case would seem to fall within the rule laid down in *Enos* v. *Buckley*, 94 Ill. 458.   That was a suit in eject-

ment brought by Agnes D. Enos and Zimri Enos, her husband, against Buckley, to recover lands described in the declaration. The defendant's title was, first, a tax deed, which, by reason of a defect in its description of the land conveyed, was void for uncertainty; and second, a deed from the grantee in the tax deed, with proper description, to one Bracken, the latter being set up as color of title. It appeared that possession was taken and held by Bracken under the latter deed for more than seven years. This was held to establish a good title in Bracken, and the defendant, who deraigned title from Bracken, was held to have established a good title in himself. It appeared in that case that the title to the lands then in controversy was vested in Mrs. Enos prior to 1846, when she married Zimri Enos, and that the husband thereby became seized of a life estate in the premises, and, consequently, that the wife had only an estate in remainder, and it was urged that the Statute of Limitations could not run against Mrs. Enos because she had no immediate right of action for a possession of the land. The court, after discussing the case of *Castner* v. *Walrod*, 83 Ill. 171, and distinguishing it from the case then under consideration, held that the estate in remainder of the wife, as well as the possessory life estate of the husband, was barred. In reaching that conclusion the court said (p. 463): "The present case involves a different section,—section 6, of seven years' payment of taxes with color of title and possession. To prevent the acquirement of the bar under this last section it was only necessary to pay the taxes. The outstanding estate in the husband here formed no impediment to the payment of taxes any time after the act of 1861. The taxes should have been kept paid, not on any one's particular interest in the land, but on the whole land. As between the owner of the life estate and the reversioner, it is undoubtedly the duty of the former to pay the taxes; but the statute requires the payment of the taxes on the entire interest in the land,

no matter how it may be divided and owned, and if they be not kept paid the whole estate in the land may become barred, as against the owners, under the statute. If, by reason of the husband's estate in the land, the wife might not have been able to derive from it the means to pay the taxes, she might otherwise, under and in consequence of the Married Woman's act of 1861, have become possessed of such means, and which she would not except for that act."

It will be noticed that in the present case the owner of the estate in remainder was laboring under no disability, and no question can arise as to her ability to acquire the means to pay the tax on the land, and thus interrupt the running of the Statute of Limitations. The rule laid down in *Enos* v. *Buckley, supra*, would therefore seem to apply, and under it her title must be held to be barred.

In the present case the deed to the defendant was offered in evidence, not only as tending to prove title, but as color of title. There can be no doubt that it was sufficient to show color of title. It purported on its face to convey the title of the land to the defendant, and that was sufficient to make it constitute claim and color of title. An instrument of writing, to be effectual as color of title, must purport on its face to convey the title. It must apparently transfer title to the grantee. Not that the title, when traced back to its source, should prove to be an apparently legal and valid title, but the instrument under which the claimant holds and upon which he relies must profess to convey title to the grantee. (*Dickenson* v. *Breeden*, 30 Ill. 279; *Holloway* v. *Clark*, 27 id. 483; *Woodward* v. *Blanchard*, 16 id. 424; *Fagan* v. *Rosier*, 68 id. 84; *Dawley* v. *VanCourt*, 21 id. 459; *Watts* v. *Parker*, 27 id. 224; *Hinkley* v. *Greene*, 52 id. 223.) Where the deed purports, on its face, to convey title, it will be sufficient to show claim and color of title made in good faith, unless bad faith is expressly shown,—and there is nothing in this case tending to

charge defendant with bad faith or fraud on his part in relation to the claim and color of title set up.

But it is claimed that the rule laid down in *Enos* v. *Buckley, suprà,* is inconsistent with the doctrine held in other and more recent cases. We have examined all the decisions having any bearing on the question to which our attention has been called, and find that all are clearly distinguishable from *Enos* v. *Buckley.* In *Mettler* v. *Miller,* 129 Ill. 630, a life tenant conveyed to a third person by a deed purporting to pass an absolute estate, and it was held that possession by the tenant for life cannot be adverse to the remainder-man or reversioner, and that the possession of his grantee could not, during the continuance of the life estate, be adverse to the remainder-man or reversioner, so as to set the Statute of Limitations running against the latter. In that case *Enos* v. *Buckley* and other similar cases were expressly referred to and held to be not in point. In the present case the defendant did not hold under or in privity with the life tenant, but adversely to the tenant in remainder. In *Miller* v. *Pence,* 132 Ill. 149, it was held that one entering into the possession of land under color of title acquired in good faith, by means of a tax deed, and continuing such possession for seven years, paying all taxes legally assessed thereon, will establish a good title to the land as against the prior owner resting under no disability, but not as against a merely inchoate right of dower. This was upon the principle that, the right of dower being only inchoate during the lifetime of the husband, the wife is under no duty to pay taxes on the land, or any part of it, for the protection of her inchoate right. In *Rohn* v. *Harris,* 130 Ill. 525, the possession which was sought to be set up by way of limitation was taken and held under a conveyance from the life tenant, and it was held that the title of the reversioner was not barred.

Some other cases are referred to, but in none of them do we find a state of facts similar to those appearing in

*Enos* v. *Buckley, supra*, or to t. ᵜ facts appearing here.  We are disposed to hold, therefore, that the case must be governed by the rule established in *Enos* v. *Buckley*, and under the doctrine of that case it must be held that the' defendant had acquired title by limitation, as against the plaintiff, prior to the commencement of this suit.

The judgment of the circuit court will therefore be affirmed.                            *Judgment affirmed.*