## WESTENFELDER v. GREEN et al.

### (Circuit Court, D. Oregon. November 12, 1896.)

#### No. 1,941.

1. **ADVERSE POSSESSION—AGENCY—GUARDIAN AND WARD.**

Where one has entered into possession of property as agent for the owner, and after such owner's death is appointed guardian of his children, and continues to hold the property, his possession is that of his wards, and is adverse to any others claiming to be children and heirs of the decedent; and the owner's death and the appointment as guardian are sufficient notice to such claimants that the agency has terminated, and his holding is adverse to them. Westenfelder v. Green, 34 Pac. 23, 24 Or. 448, followed.

2. **SAME—POSSESSION OF CO-HEIRS.**

The possession of persons who enter and hold, claiming exclusive title as sole heirs, is adverse to other heirs.

3. **SAME—PAYMENT OF TAXES IN NAME OF DECEDENT.**

The fact that a guardian of minor heirs, holding lands for them, charges taxes paid thereon to the estate of the decedent, does not affect the exclusive character of his possession, as being for his wards, and adverse to others claiming to be heirs.

4. **SAME—POSSESSION OF DOWRESS.**

One holding as dowress, by virtue of dower proceedings instituted against heirs in possession claiming exclusive title in fee, holds for such heirs, as against other persons claiming to be heirs.

5. **SAME—DEEDS—COLOR OF TITLE.**

Where there is a question as to whether a conveyance was within a statutory prohibition, and subsequently the grantors therein have executed a deed to certain persons, who are holding as heirs of one claiming under the former deed, and adversely to others claiming to be heirs of the same person, the latter deed is sufficient to constitute color of title and set the statute of limitations running in favor of the grantees therein.

6. **SAME—APPOINTMENT OF GUARDIAN.**

A question as to the legality of the appointment of a guardian who holds property for minor heirs does not affect the fact of his possession, or its adverse character in favor of those whom he assumes to represent.

This was a suit by Ludwig Westenfelder against Flora E. Green, Obed Green, and Frederick Westenfelder, to quiet title to a certain parcel of land.

G. G. Ames, for complainant.

W. W. Thayer and E. B. Williams, for defendants.

BELLINGER, District Judge. This is a suit to quiet the title to the east 30 feet of lot 1 in block 167 in the city of Portland. In 1856 Jacob Westenfelder, a native of Germany then recently arrived in the country, married one Mary Ann Woolen, by whom he had two children,—Clementena, afterwards married to John F. Dawes, and Mary Ann, who died without issue at the age of 17 years. On September 11, 1862, this Jacob Westenfelder purchased lot 1 in block 167, including the premises in dispute, for $700, and at once went into possession of the lot, where he remained until the death of his wife, Mary Ann, which occurred in the latter part of that year. This purchase was from W. D. Carter and wife, who claimed title under a deed of June 9, 1862, from Franklin Cheney, who claimed from W. W. Chapman and wife by deed executed September 8, 1853. These several deeds con-

tained full covenants of warranty. Shortly after his wife's death Jacob went to the mines in Idaho, first having constituted Joseph E. Sedlack his agent, with authority to care for this lot and its improvements, to collect rents, pay taxes, etc. Some five or six years thereafter Jacob died intestate in Idaho. Upon learning of Jacob's death, and on June 8, 1869, Sedlack applied for and was granted letters of guardianship for the two children of Mary Ann, who were then in Marion county, where they had resided since their mother's death. Sedlack continued in the control and management of the property until June 14, 1880, when it was sold by Clementena and her husband, subject to dower, as hereinafter stated, to O. Green, one of the defendants, her sister having died in the meantime. O. Green thereafter conveyed to the defendant Flora, his wife. On September 5, 1879, Eva Schroeder, claiming to be the widow of Jacob Westenfelder, made application for assignment of dower, and the east 30 feet of the lot, being the premises in dispute, was set off to her on January 5, 1880. The dowress' possession continued until July 24, 1890, when the plaintiff secured possession by ejectment against parties in possession under her.

By section 4 of the donation act,—the act of September 27, 1850, under which Chapman's title was derived,—all future contracts, by any person entitled to the benefits of the act, before receipt of patent, were prohibited. This prohibition remained until removed by the act of July 17, 1854. It is claimed for plaintiff's title that the deed of Chapman to Cheney, executed September 8, 1853, is not within the prohibition, for the reason that such deed was merely to carry out a contract of sale made in June, 1850, and was in confirmance of a conveyance by Chapman to Cheney at that time; the established doctrine being that the prohibition of section 4 of the donation act did not apply to antecedent contracts. To establish the fact of this prior contract and deed, the following recital, in the deed to Cheney of September 8, 1853, is relied upon:

"This indenture witnesseth, that, in consideration that on the —— day of June, A. D. 1850, Stephen Coffin, Daniel H. Lownsdale, and the said W. W. Chapman, by deed of quitclaim, conveyed to W. W. Chapman, who conveyed to Cheney, the property hereinafter described," etc.

Such is plaintiff's record title.

In 1871, W. W. Chapman and wife, in confirmation of his prior deed or deeds, and presumably upon the assumption that Clementena and Mary Ann, children of Mary Ann Woolen, were the heirs of Jacob Westenfelder, executed their deed to lot 1, block 167, to said children; and in 1875, W. W. Page also executed a like deed, to relieve the property from the lien of a judgment in his favor. This last deed of Chapman is relied upon by the defendants as constituting title, or at least "color of title," under which the bar of the statute of limitations is invoked in favor of the defendants. Both parties also claim title under the statute of limitations. Sedlack, having been in possession as the agent of Jacob Westenfelder since 1862, was, as already stated, appointed guardian of the Oregon children on January 8, 1869; and in that relation, as is claimed, his possession continued until the assignment of dower in

favor of Eva Schroeder was had January 5, 1880. The possession of the dowress was continuous and uninterrupted for more than 10 years, and until the ouster of her agents by the plaintiff in 1890.

The plaintiff, having introduced evidence tending to prove his heirship, contends (1) that Sedlack's possession as the representative of Jacob Westenfelder was not changed by his appointment as guardian of the Oregon children, and that he could not accept a trust hostile to that held by him as Westenfelder's agent and to the true heir without giving notice that his future holding would be adverse; and (2) that the possession of the dowress was for the true heir. It is further contended, in that behalf, that the county court was without jurisdiction to appoint Sedlack, and that such appointment was therefore void. On the other hand, the contention is made (1) that plaintiff has not shown himself to be the son of Jacob Westenfelder; (2) that the Chapman deed, under which Jacob Westenfelder claimed, was void under section 4 of the act of September 27, 1850; (3) that the possession of Sedlack, from the date of his appointment as guardian of the Oregon children, June 8, 1869, was in the right of such children, and was hostile to plaintiff; and (4) that the possession of the dowress was for the Oregon children, because the dower was taken as out of their estate, and was against them, they being the parties against whom the proceeding for assignment of dower was had.

The case of Westenfelder v. Green, 24 Or. 448, 34 Pac. 23, was a law action by this plaintiff against the defendant Green to recover that part of lot 1 in block 167 not involved in this suit. It is held, in effect, that the possession of the lot by Sedlack was that of the two Oregon children, since he held possession by virtue of his relation to them as guardian; that he could not change the character of his holding by any admission or declaration he might make. It is further held that the rule that the possession by one heir or tenant in common is the entry and possession of all did not apply in that case, because the interests of the Oregon claimants were adverse to the plaintiff; and this is upon the ground that, if the plaintiff's theory is true, the Oregon children were not heirs at all, but strangers to the title, and entered into the possession as mere trespassers, in a mistaken belief of their heirship, and, on the other hand, if the Oregon children were in fact heirs, then their entry was in their own right. If I was inclined to dissent from this view, I should hesitate to do so, where the result would be to maintain the title of one set of claimants in the supreme court of the state, and of the other set in this court. There is nothing in the facts as they appeared in the supreme court of the state to distinguish the two cases, unless it is in the statement in the former case that Sedlack in his capacity as guardian took possession of the land in controversy, while in this case it appears that Sedlack was already in possession as Jacob Westenfelder's agent at the time of his appointment as guardian. Upon this fact it is claimed by the plaintiff that Sedlack could not accept a trust hostile to that held by him as agent, and to the true

heirs, without first giving notice that his future holding would be adverse. In order to hold for the Oregon children, it was not necessary that Sedlack should surrender the possession acquired by him as agent. Although a party may enter into possession in privity with the true owner, he may, without first surrendering the premises, dissever such relation, and claim by adverse title. Creekmur v. Creekmur, 75 Va. 430. It is enough if knowledge of such adverse holding is brought home to the owner, or notice of collateral facts from which such knowledge will be implied. Wells v. Sheerer, 78 Ala. 142. The death of Jacob Westenfelder terminated the agency under which Sedlack held at the time. The true owner could not thereafter have been misled into the belief that the possession of Sedlack was in the right in which he entered. The death of their father was a fact from which the plaintiff and his brother must have inferred that Sedlack, during the ensuing 10 years and more, was not holding under the agency under which he entered. His appointment as guardian of the Oregon children, and the assumption of such trust, was a fact from which the present claimants were to infer a holding adverse to them by the guardian. There was no privity between them and the Oregon children, for whom Sedlack was acting. If the facts put forward by them as evidence of their right are true, the Oregon children are not the heirs of Jacob Westenfelder, and Sedlack's possession as guardian was against the right of Ludwig, the plaintiff, and his brother.

It is argued that, inasmuch as the claim of Sedlack and the Oregon children is the measure of their right, their claim as heirs only entitles them to possession jointly with the other heirs, and only entitles them to hold for themselves for their share, and for the other heirs for the rest of the estate. If this is true, then, as between different heirs or tenants in common, the possession of a part can never be adverse to the rest, no matter what the intention of those in possession is, nor how fully informed the rest may be as to such intention. The argument for the plaintiff assumes that, where one is in possession as heir, such possession is for the benefit of all who are in fact heirs, without reference to the extent of the interest claimed by the one in possession. In Ricard v. Williams, 7 Wheat. 60, cited for plaintiff, the doctrine that applies in such a case is thus stated:

"There is no doubt that, in general, the entry of one heir will inure to the benefit of all, and that, if the entry is made as heir, and without claim of an exclusive title, it will be deemed an entry not adverse to, but in consonance with, the rights of the other heirs. But it is as clear that one heir may disseize his co-heirs, and hold an adverse possession against them, as well as a stranger. And, notwithstanding an entry as heir, the party may afterwards, by disseizure of his co-heirs, acquire an exclusive possession, upon which the statute will run. An ouster or disseizure is not, indeed, to be presumed from the mere fact of sole possession; but it may be proved by such possession accompanied with a notorious claim of an exclusive right."

The fact, therefore, that the entry was as heir does not make such possession necessarily inure to the benefit of all who are heirs. It is only when such entry and possession is without claim of an exclusive title that it has that effect. The claim of Sedlack and

of the Oregon children is the measure of their right. That claim was as sole heirs. It was hostile to the claim made in the plaintiff's behalf, as his claim is hostile to theirs. Whether the possession is adverse or not is a question of intention upon the one part, and of knowledge, or of facts from which knowledge is inferred, upon the other. Nor is the exclusive character of the possession of the Oregon children affected by the fact that taxes paid by Sedlack in the meantime were charged by him to the estate of Jacob Westenfelder. These payments cannot have the legal effect of recognizing right or title to the land upon which the taxes were paid in those now claiming to be heirs, but whose existence was at the time not known to the Oregon children, and whose heirship the latter have never admitted. Moreover, the act of the guardian in charging the taxes to the estate of Jacob Westenfelder can no more prejudice his wards in their possession than can his statements made during the same time.

I am also of opinion that the possession of Eva Schroeder must be held to be for the Oregon children. That possession was obtained in a proceeding brought against them alone as owners of the fee. There is no privity between them and those who claim through the first wife, Anna Stein. If the claim of the latter to be the heirs of Jacob Westenfelder is well founded, the Oregon children were without title or right of possession. Moreover, the proceeding under which Eva Schroeder obtained her possession not only did not bind the plaintiff and his brother, but, upon the facts presented in their behalf, her marriage with Jacob Westenfelder took place while Anna Stein was living, and she was without any right of dower in the premises. Neither the possession of Eva Schroeder as dowress, nor that of the Oregon children as heirs, was consistent with the claim and title put forward by the plaintiff and his brother, and the possession so held cannot, therefore, inure to their advantage.

It is not material to inquire whether or not the deed of September 1, 1871, by Chapman to Clementena and Mary Ann, conveyed title. The deed purported on its face to convey the title of the land in dispute to the Oregon children. Any title to these premises must have been derived from Chapman. It is at least open to serious question whether Chapman's prior deed of September 8, 1853, to Cheney, operated, under the circumstances, to convey any title. At that time the prohibition of section 4 of the donation act against future contracts before patent by the government grantees was in force. That deed was, therefore, within the prohibition, unless it was made to carry out a contract entered into prior to the passage of the donation act. The evidence of this prior contract is the recital in the Cheney deed "that, in consideration that on the —— day of June, A. D. 1850, Stephen Coffin, Daniel H. Lownsdale, and the said W. W. Chapman, by deed of quitclaim, conveyed to W. W. Chapman, who conveyed to Cheney, the property hereinafter described," etc. Do the words "who conveyed to Cheney," etc., necessarily imply a conveyance by Chapman to Cheney in June, 1850? Admitting, for the sake of argument, that

they *do*, there is such room for controversy as gives at least colorable ground for the opposite contention. If the recital does not require the inference claimed for it, then, the Cheney deed being within the prohibition of the donation act, the legal title to the disputed lot was in Chapman at the date of the deed to Clementena and Mary Ann, and the legal title passed to them by that deed; all of which goes to show that the latter deed is at least sufficient to constitute color of title, and set the statute of limitations running in favor of the grantees in it, claiming to hold adversely. "A deed purporting on its face to convey the title of land to the grantee is sufficient to constitute claim and color of title in such grantee, although the title, when traced back to its source, is not legal and valid." Nelson v. Davidson, 160 Ill. 254, 43 N. E. 363.

It is not material to determine whether Sedlack's possession prior to the Chapman deed of September 1, 1871, as guardian claiming for the Oregon heirs, constituted color of title, and set the statute in motion. There was color of title, at least, after that deed, if not before, and there was no hostile interruption of that possession until 1890. Nor is it material to determine whether the county court had jurisdiction to appoint Sedlack as guardian. He assumed that trust, and his possession was in fact as guardian. The legality of his appointment does not affect the fact of his possession, nor its adverse character in favor of those whom he assumed to represent.

Ordered that the bill of complaint be dismissed.