CURTIS FIELD

*v.*

CLARENCE M. PEEPLES *et al.*

*Opinion filed June 17, 1899.*

1. REMAINDERS—*when remainder vests in those in esse, subject to being re-opened.* A devise of a life estate with remainder to the life tenants' children vests the remainder in such children as are in being at the testator's death, subject to its being opened to let in such children as may be born during the continuance of the life estate.

2. EJECTMENT—*when remainder-men may bring ejectment.* A life tenant having conveyed her estate to children having a vested remainder in the property, the life estate becomes merged in the fee, and such children may bring ejectment before the death of the former life tenant, as against parties who claim the premises in fee and not by virtue of color of title to the life estate.

3. LIMITATIONS—*operation of sections 6 and 7 of the statute is not to transfer title.* The operation of sections 6 and 7 of the Limitation act is not to transfer the title of the former owner to the person claiming under the statute, but to bar or extinguish the former owner's right of recovery. (*Jacobs v. Rice*, 33 Ill. 369, criticised.)

4. JUDGMENTS AND DECREES—*jurisdiction is presumed where judgment is relied upon collaterally.* Where a judgment or decree of a court of general jurisdiction is relied upon collaterally, jurisdiction

must be presumed although it is not alleged and does not affirmatively appear of record, and such presumption is only overcome when the record itself shows want of jurisdiction.

5. SAME—*when loss of petition for guardian's sale does not invalidate the decree.* The loss of the petition for a guardian's sale does not invalidate the decree, when relied upon in a collateral proceeding some twenty-five years after its rendition, where the decree in evidence shows the presentation of the petition; notice of the application and personal notice to the ward; the filing of an answer by guardian *ad litem*, which is approved by the court; that a hearing was had upon evidence introduced, and that the court found the petition and its statements to be true.

6. JUDICIAL SALES—*endorsement of approval on report of sale is sufficient.* The court's endorsement of approval upon a guardian's report of sale is a substantial compliance with the statute, although the better practice is for the court to enter its order upon its records.

APPEAL from the Circuit Court of Pulaski county; the Hon. O. A. HARKER, Judge, presiding.

JAS. C. COURTNEY, and BOYD & WALL, for appellant:

A devise to a person during her life, and after her death to descend to her children, creates a vested remainder in any children *in esse* at the time of the death of the testator, liable to open and let in all the children of the life tenant who might be born thereafter. Tiedeman on Real Prop. sec. 402; *Kellett* v. *Shepard*, 139 Ill. 433; *Doe* v. *Provoost*, 4 Johns. 61; *Doe* v. *Considine*, 6 Wall. 475.

Under such a devise all of the children of the life tenant at her death would share *pro rata.* 2 Jarman on Wills, 157; *Cheney* v. *Teese*, 108 Ill. 473.

Children *in esse* under such a devise, during the lifetime of the first taker have no absolute estate. *Adams* v. *Ross*, 30 N. J. L. 513; Tiedeman on Real Prop. sec. 402, note 1; *Carney* v. *Davis*, 46 Pa. St. 25; *Graham* v. *Houghtalin*, 30 N. J. L. 558.

They cannot, by any act, bar the rights of the children who may afterwards be born. Tiedeman on Real Prop. sec. 402, note 1.

Where a judgment or decree of a court of general jurisdiction is attacked in a collateral proceeding, the judg-

ment or decree itself affords evidence that there was a declaration, bill or petition, as the case may be, unless the judgment or decree shows affirmatively on its face that no such papers were filed, for every intendment is made in favor of the validity of a judgment and decree of a court of general jurisdiction, unless the contrary expressly appears of record. *Wenner* v. *Thornton*, 98 Ill. 156; *Spring* v. *Kane*, 86 id. 580; *People* v. *Cole*, 84 id. 327; *Matthews* v. *Hoff*, 113 id. 90.

Every presumption will be indulged in favor of the jurisdiction of any court of general jurisdiction, and the county courts in this State are courts of general jurisdiction. *Matthews* v. *Hoff*, 113 Ill. 90.

If it is possible for the court to have jurisdiction, it will be presumed the state of facts existed which authorized it to assume to render judgment. *Wallace* v. *Cox*, 71 Ill. 548.

A vested remainder to a class can never take effect in possession until after the death of the first taker. Tiedeman on Real Prop. 369; *Scofield* v. *Olcott*, 120 Ill. 362.

A life estate is subject to be barred by the Statute of Limitations, the same as any other estate. *Owen* v. *Peacock*, 38 Ill. 33; *Kibbie* v. *Williams*, 58 id. 30.

LANSDEN & LEEK, and C. L. V. MULKEY, for appellees:

Clarence M. Peeples, under the fifth clause of the will of Orville Pool, took a vested remainder in fee, and upon birth of Cornelia he and she became tenants in common of the real estate described in said clause. *Voris* v. *Sloan*, 68 Ill. 593; *Smith* v. *Kimbell*, 153 id. 377; *Doe* v. *Considine*, 6 Wall. 458; *Doe* v. *Perryne*, 3 T. R. 484; *Scofield* v. *Olcott*, 120 Ill. 362; *Frazer* v. *County of Peoria*, 74 id. 282; *Ballard* v. *Ballard*, 18 Pick. 41; *Dingley* v. *Dingley*, 5 Mass. 535; Tiedeman on Real Prop. sec. 402, notes; *Doe* v. *Provoost*, 4 Johns. 61.

Wherever there is a doubt as to whether a remainder is vested or contingent, the courts always incline to construe it a vested remainder. Tiedeman on Real Prop.

sec. 401; *Croxall* v. *Shererd*, 5 Wall. 287; *Dingley* v. *Dingley*, 5 Mass. 535; *Doe* v. *Provoost*, 4 Johns. 61; *Doe* v. *Perryne*, 3 T. R. 484.

The will of Orville Pool being a link in appellant's chain of title, he is chargeable with notice that said will conveys a life estate in the land to Ellen Pool Peeples and a vested remainder only to the children of said Ellen. *Bishop* v. *O'Conner*, 69 Ill. 431; *Aderhold* v. *Oil Well Supply Co.* 158 Pa. St. 401; *Tarr* v. *Robinson*, id. 60.

Where a purchaser at a guardian's sale has no right, under his deed, to take possession of the land during the continuance of a life estate therein, the taking of such possession by him and his grantees is a trespass against the possession of the life tenant, and such possession being a wrongful possession it will not be protected by said sections 4 and 6 of the Limitation act. *Burton* v. *Perry*, 146 Ill. 71; *Riggs* v. *Henneberry*, 58 id. 134.

The county court is not shown to have had jurisdiction. The absence of the petition is not sufficiently accounted for. It is not shown to have been lost. Neither the clerk's certificate nor judge's minutes can supply the place of necessary papers or of the orders of court. *Steele* v. *Steele*, 89 Ill. 51; *McCormick* v. *Wheeler*, 36 id. 114.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of ejectment brought by Clarence M. and Cornelia Peeples, against Curtis Field, to recover the north-west quarter of the south-west quarter of the south-west quarter of the south-west quarter, and the south-east quarter of the south-east quarter of section 34, township 14, range 2, in Pulaski county. On a trial in the circuit court the issues were found in favor of the plaintiffs,—that the plaintiffs were seized in fee simple of the lands described in the declaration,—and judgment was entered on the finding. The defendant, Field, appealed.

It is first claimed that plaintiffs failed to show a fee simple title to the premises, and hence the judgment was

erroneous. The parties claim from a common source, Orville Pool, who died testate June 30, 1871. On the trial plaintiffs read in evidence a certified copy of the will of said Orville Pool, the fifth clause of which is as follows:

"*Fifth*—I hereby devise, will and bequeath to my daughter, Ellen Pool Peeples, all the real estate of which I shall die seized in the counties of Pulaski, Johnson and Alexander, in the State of Illinois, to have and to hold the same for and during her natural life and at her death to descend to her children, and in case she dies without issue, the said lands in the said counties of Pulaski, Johnson and Alexander to descend to the said Marshall M. Pool and Augusta M. Pool Townsend, and their heirs, equally, in fee simple."

A deed was also introduced, dated February 1, 1893, from Ellen P. Peeples and husband to Clarence M. Peeples and Cornelia Peeples, purporting to convey the land in controversy and other lands. Plaintiffs also read in evidence a deposition of Ellen P. Peeples, in which she, among other things, testified as follows:

*Interrogatory fifth:* "If you have any child or children, give the name or names thereof, and the date or dates of their birth, respectively."—A. "I have two children. Their names are Clarence M. Peeples and Cornelia Peeples. Clarence M. Peeples was born July 30, 1871, and Cornelia Peeples November 11, 1874."

*Interrogatory sixth:* "If you have had any other child or children, give dates of birth and death thereof."—A. "I never had any other children."

It will be observed that the last part of clause 5 of the will provides that in case the life tenant dies without issue the property shall descend to Marshall Pool and Augusta Townsend. The birth of a child to the life tenant, Ellen P. Peeples, settled any controversy that might arise in regard to the land ever passing as a contingent remainder to Marshall Pool and Augusta Townsend. The words, "in case she dies without issue," have been con-

strued by this court to mean without having had issue,— not without surviving issue. (*Voris* v. *Sloan*, 68 Ill. 588; *Smith* v. *Kimbell*, 153 id. 368.) No further attention will therefore be given to that clause in the will.

It is, however, claimed that under the fifth clause of the will the fee of the lands therein devised would not pass to the children of Ellen P. Peeples until her death, and as she was living when the action was brought, the plaintiffs could not recover. Clarence Peeples was *in esse* at the time of the death of the testator, and we are of the opinion that the only construction that can be placed upon the fifth clause of the will, under the authorities, is, that he took a vested remainder. In *Doe* v. *Provoost*, 4 Johns. 61, where P. devised lands to his daughter, C., during the term of her life and upon her death unto all children C. shall have lawfully begotten at the time of her death, it was held that the four children of C. who were living at the time of the devise and at the death of the testator took a vested remainder in fee, and in case there had been any children born afterwards the estate would have opened for their benefit. In *Doe* v. *Considine*, 6 Wall. 485, it was held that if A devises to B for life with remainder to his children, and B marries and has a child, the remainder becomes a vested remainder in fee in the child as soon as the child is born, and if the child dies in the lifetime of the parent the vested estate in remainder descends to his heirs. (See, also, *Doe* v. *Perryn*, 3 T. R. 484.) Here, the remainder was limited to a class, some of whom were *in esse*, and the rule in such cases, as we understand it, is, that the fee vests in those who are *in esse*, subject to be opened and let in those who may afterwards be born during the continuance of the life estate.

Under the rule indicated, upon the death of the testator, Orville Pool, the fee went to Clarence Peeples, and when Cornelia Peeples was born the two children of the life tenant held as tenants in common. The fact that another child may be born to the life tenant and may come

in and share with the two children of the life tenant who were in existence at the time the suit was brought does not militate against the rule indicated. There is no controversy here with after-born children claiming a portion of the fee. The question is, in whom was the fee vested at the time the action was brought? If the fee was in Clarence and Cornelia Peeples, as we are satisfied it was, they, so far as the question under consideration is concerned, would be entitled to recover. It may be conceded that appellees could not have maintained an action of ejectment if the life estate had remained in the life tenant; but when she conveyed all her interest in the life estate to appellees, the life estate became merged in the fee and became extinct. (4 Kent's Com. 100.) There was, then, after the execution of the deed by the life tenant, nothing to prevent appellees from bringing their action of ejectment.

On the trial the appellant read in evidence a deed for the land in controversy from John M. Peeples, guardian of Clarence M. Peeples, to Ezekiel Field. This deed was made on a sale of the land at public vendue, under a decree of the county court of Gallatin county; also, a deed from Field to Summers, a deed from Summers to Brooks, a deed from Brooks to Todd, and a deed from Todd to himself. The appellant also proved actual residence on the land, by himself and his predecessors in title, for more than seven years before the bringing of the action. This evidence was introduced for the purpose of claiming under the Limitation act of 1835. Appellant also proved actual possession under color of title, together with payment of all taxes on the land for each successive year from 1883 to 1894, inclusive, as a compliance with the Limitation act of 1839. It is claimed, as we understand the argument, that the evidence thus introduced is a bar to a recovery on the part of the life tenant, Ellen Pool Peeples, and that as she was barred by the statute, appellant, by force of the statute, became the owner of the life estate pos-

sessed by her, and, thus being the owner of the life estate, appellant, regardless of other questions, was entitled to possession of the land as against appellees, who held as remainder-men.

In support of the position that where the owner of the paramount title is barred by the statute such title is transferred to the party holding under the Limitation law, we are referred to *Jacobs* v. *Rice*, 33 Ill. 369, and *Hale* v. *Gladfelder*, 52 id. 91. As to the first case mentioned, it is said by the court, in substance, that where a bar has been established under the statute, the effect is to transfer the title. The expression, however, was not necessary to a decision of the case, and may be regarded as *obiter*. The other case, as we understand it, holds a directly opposite view. Indeed, before and since the decision in *Jacobs* v. *Rice*, this court has expressly held that the operation of sections 6 and 7 of chapter 83, entitled "Limitations," is not to transfer the title of the former owner to the person claiming under those sections, but the effect merely is to bar or extinguish the former owner's right of recovery. Such is the doctrine of the following cases: *Newland* v. *Marsh*, 19 Ill. 376; *Hinchman* v. *Whetstone*, 23 id. 185; *McCagg* v. *Heacock*, 42 id. 153; *Hale* v. *Gladfelder, supra.*

The fact that the Statute of Limitations might have been successfully interposed as a defense had the action been brought by Ellen Pool Peeples, has no special bearing on this case. Here, appellees are claiming to recover as owners of the fee, and it is not claimed, as we understand the argument, that they are barred by the Statute of Limitations. Nor could such claim be successfully made, as the record shows that when the land was sold under decree by the guardian, and at the time possession was taken under that title, Clarence and Cornelia Peeples were minors, and that they became of age, respectively, on July 30, 1892, and November 11, 1892. They commenced this action in the circuit court on January 17, 1894. Having brought their action within two years after they be-

came of age, they are therefore taken out of the operation of the Statute of Limitations by the express provision of the ninth section of the act. (Hurd's Stat. 1897, p. 1048.)

On the trial the appellant claimed that appellees were not entitled to recover because the land had been sold by a guardian under a decree of court, and for the purpose of establishing this defense appellant introduced a decree of the county court of Gallatin county, authorizing John M. Peeples, as the guardian of Clarence M. Peeples, to sell the land in question. A sale of the land was made under this decree, a report of the sale was presented to the court and was approved, and a deed made to the purchaser. The decree, report and alleged approval of sale and deed were all put in evidence, but the petition upon which the decree was rendered, having been lost or destroyed during the high water in Shawneetown, was not in evidence. Many technical objections are urged to the proceedings. It is claimed, in the absence of a petition there is nothing to show that the court had jurisdiction of the subject matter, and hence the decree and deed are void. In 1873, when the decree was rendered, the statute authorized county courts to order the sale of real estate belonging to minors for their support and education, or to invest the proceeds in other real estate, on the petition of the guardian, in the county where the ward resided, or if the ward did not reside in the State, on filing petition in the county where the real estate, or some part of it, was situated. The statute required the petition to set forth the condition of the estate and the facts and circumstances on which the petition was founded; that it should be signed by the guardian and verified by his affidavit, and be filed at least ten days before the commencement of the term of court at which application was made; that "notice of such application shall be given to all persons concerned, by publication in some newspaper published in the county where the application is made, at least once in each week for three successive weeks, or by

setting up written or printed notices in three of the most public places in the county, at least three weeks before the session of the court at which such application shall be made. The ward shall be served with a copy of such notice at least ten days before the hearing of the application."

The decree rendered by the court was in substance as follows:

"STATE OF ILLINOIS, } ss.
    Gallatin County.

"At a county court in and for said county judicially setting, to be holden at the court house in the city of Shawneetown Monday, the 21st day of April, 1873: Present: Hon. Milton Bartley, judge; Joseph B. Boyer, clerk, and Joel Cook, sheriff. Court opened by proclamation by Sheriff Cook.

"In the matter of the petition of John M. Peeples, guardian of Clarence M. Peeples.—Petition to sell real estate.

"And now, on this 21st day of April, 1873, being the first day of the term of said court, comes the said John M. Peeples, guardian, etc., and it appearing to the court that due notice of this application has been made and published according to the provision of the statute in that behalf, and that the said Clarence M. Peeples, a ward of the said guardian, has been personally served with said notice by delivering to him a true copy thereof more than ten days before the present term of this court: It is therefore ordered by the court, that Ed. Youngblood, attorney and solicitor in chancery, be and is hereby appointed guardian ad litem for said ward, to inquire into and make answer to said petition and otherwise protect and guard the interest of said ward in the matter of the petition of John M. Peeples, guardian, etc. And now, on this 21st day of April, it being the first day of the present term of court, as aforesaid, comes again the said petitioner, and it appearing that said guardian ad litem has filed his answer to said petition, and the same having been examined and

approved by the court, and the said petition coming on
to be heard upon the proofs and evidence in this cause,
and the court, after having duly considered the proof and
evidence aforesaid, finds, therefore, that said petition, and
the matters and things therein stated, are true in sub-
stance and in fact, and that full and satisfactory proof
thereof has been made: It is therefore ordered, adjudged
and decreed that said petitioner proceed without delay,
as guardian aforesaid, to sell lands in said petition men-
tioned and described, viz.: The south half of section 34,
township 14, S., range 2, east, and north half of section 3,
township 15, S., range 2, east, situated in the county of
Pulaski, State of Illinois; also the south half of section
2, township 11, S., range 2, east, situated in the county of
Johnson and State of Illinois, in manner and upon the
following terms:" Then follow terms of sale, provision
for notice, etc.

It is insisted, as the decree fails to show the existence
of the facts required by the statute to authorize a court
to order the sale of the minors' lands, the decree and sale
are void. There may be errors in the proceeding to sell
the minors' lands which might lead to a reversal of the
decree on a writ of error, but where the decree is attacked
collaterally, as is the case here, it cannot be defeated or
impeached for mere errors. It is a rule of uniform appli-
cation that in relation to courts of general jurisdiction
nothing is presumed to be out of their jurisdiction but
that which specially appears to be so; but, on the con-
trary, nothing shall be intended to be within the juris-
diction of an inferior court but that which is expressly
alleged. This rule is limited to collateral proceedings,
and where the record of a judgment or decree is relied on
collaterally, jurisdiction must be presumed in favor of a
court of general jurisdiction, although it be not alleged
or fails to appear in the record. (*Swearengen* v. *Gulick*,
67 Ill. 208.) In *Matthews* v. *Hoff*, 113 Ill. 90, where the juris-
diction of a county court was called in question collat-

erally, it was said (p. 96): "Every presumption will be indulged in favor of the jurisdiction of a court of general jurisdiction, and county courts in this State are courts of general jurisdiction with respect to all matters coming within the provision of their jurisdiction as given by law." In *Osgood* v. *Blackmore*, 59 Ill. 261, in discussing the question of jurisdiction, it was said (p. 267): "Where a court of superior general jurisdiction has proceeded to adjudicate and to decree in a matter before it, all reasonable intendments will be indulged in favor of its jurisdiction. * * * The presumption which the law indulges in favor of its jurisdiction can only be overcome, in a collateral proceeding, where the record itself shows there was no jurisdiction." See, also, *Harris* v. *Lester*, 80 Ill. 307; *Spring* v. *Kane*, 86 id. 580; *Kenney* v. *Greer*, 13 id. 432; *Peacock* v. *Bell*, 1 Saund. 74.

Under the rule announced in the cases cited, can the decree in question be held void? We think not. It appears from the face of the decree that a petition of John M. Peeples, guardian of Clarence M. Peeples, for leave to sell real estate, was presented to the court on the first day of the April term of court, 1873; that notice of the application, as required by law, was given; that the ward was personally served with notice, as required by the statute; that an answer to the petition was put in by the guardian *ad litem*, which was approved by the court; that a hearing on the petition was had and evidence was introduced before the court; that upon the hearing the court found the petition and matters and things therein stated to be true. Now, under the rule declared in the *Swearengen case, supra*, that nothing shall be intended to be out of the jurisdiction of a superior court or court of general jurisdiction but that which specially appears to be so, the decree in question will have to be sustained. The record contains nothing whatever tending to show that the county court in which the decree was rendered had no jurisdiction. Moreover, it would be a dangerous precedent

to hold that a decree rendered twenty-five years ago, as was the case here, could be impeached in a collateral proceeding because the petition upon which it was predicated had been lost or destroyed and could not be produced, and we are not inclined to establish a rule of that character.

One other question remains to be considered. It is contended that the report of sale was not approved. Where land belonging to a minor is sold under decree of court by a guardian, it is essential to the validity of the sale that the report of sale should be approved. Here the guardian made a report of sale, which was signed and sworn to by him, as required by the statute. On the back of the report of sale is the following: "Approved and recorded in Journal F, p. 429.—August 27, 1879." On the margin of the report is the following endorsement by the court: "Now on this day comes John M. Peeples, guardian, by Silas Rhodes, att'y, and files his report of sale, which is now approved and filed and ordered to spread of record, to-wit." The report of sale is marked: "Filed in the county court this 22d day of August, A. D. 1879.—Jo. B. Byers, Clerk." On the 17th day of January, 1880, the following order appears of record: "Amended report of sale filed by leave of the court." The amended report of sale is like the original, except that it contains a tract of land not embraced in the original report. In *Young* v. *Lorain*, 11 Ill. 624, where the approval was endorsed on the report, as here, it was held that the order made on the return was a substantial and sufficient confirmation. So in *Smith* v. *Race*, 27 Ill. 387, where the confirmation or approval of the sale was endorsed on the report, it was sustained, although the question is not discussed. In a case of this character, while we think the better practice would be to require an order of court entered upon its records approving the report of sale, yet we are not prepared to hold that the approval of the report in question is invalid. There was here a substantial compliance with the law, and that is all that can be required.

From what has been said it follows that Clarence M. Peeples was not entitled to recover. As to the other plaintiff, Cornelia Peeples, her interest in the land was not affected by the sale under the decree. The judgment of the circuit court will be reversed and the cause will be remanded.

*Reversed and remanded.*

Subsequently, upon considering this case on rehearing, the following additional opinion was filed:

Per CURIAM: This rehearing was asked and allowed on the single ground that the right of possession in the life tenant, Ellen Pool Peeples, had become vested in appellant by the running of the Statute of Limitations, and consequently appellees could not maintain ejectment against him until after her death. The right of possession under color of title to the life estate is not involved in the case. Plaintiffs below, by their declaration, claimed the premises in fee, and the defendant, both by virtue of the guardian's sale and deed and possession under that deed as claim and color of title and payment of taxes for more than seven years, also claimed the title in fee simple. He does not claim color of title to the life estate, and counsel are therefore mistaken in the assertion that the opinion heretofore filed overrules cases cited, to the effect that when the bar of the statute is complete the holder of the title by limitation may assert it against all others; that his right of possession is as perfect as though he were invested with a paramount title, and that his title is as available for attack as defense. The petition, and argument in support of it, assume a state of case not shown by this record. If appellant had set up and shown color of title to the life estate, and relied upon that title under the Statute of Limitations, then the position here contended for would have been tenable. In that case the remainder-men would undoubtedly have been postponed in their right of action until after the death of the life tenant, but under the issues in this case

they were bound to bring their action within the time limited by the statute after they became of age, and if they had delayed their action until the death of their mother, and that event had occurred more than two years after they became of age, they would have been barred.

We held in *Nelson* v. *Davidson,* 160 Ill. 254, following *Enos* v. *Buckley,* 94 id. 458, that possession for the statutory period, under claim of title, to an estate in fee, sufficient to constitute color of title, with payment of taxes for the same period, would bar the estate in remainder, notwithstanding the existence of the outstanding life estate, where the remainder-man claiming title was under no disability. The outstanding estate for life in their mother formed no impediment to the payment of taxes any time after the plaintiffs below reached their majority. It was said in the *Enos case, supra* (p. 464): "The taxes should have been kept paid,—not on any one's particular interest in the land, but on the whole land. As between the owner of the life estate and the reversioner it is undoubtedly the duty of the former to pay the taxes. But the statute requires the payment of the taxes on the entire interest in the land, no matter how it may be divided and owned, and if they be not kept paid, the whole estate in the land may become barred, as against the owners, under the statute."

It will scarcely be claimed that the position of appellant can be maintained consistently with the foregoing decisions,—that is to say, it cannot be held that plaintiffs below were bound to bring their action within two years after they became of age, and, at the same time, that they had no right to do so until after the death of the life tenant.

Upon a re-consideration of the case we are satisfied that the conclusion reached in the above opinion is fully sustained by the decisions of this court, and it will accordingly be re-adopted. *Reversed and remanded.*