## ABRAHAM HOLDERMAN
### *v.*
## HARRIET E. GRAHAM *et al.*

1. PARTITION—*administrator's sale—set aside—consent to decree.* A bill was filed for a partition among several tenants in common, and to set aside a sale of the land by an administrator, and the court, on the hearing, rendered an interlocutory decree setting aside the sale and decreeing that a partition be made, and referring the case to the master, to take proof of the use and occupation, payment of taxes, and improvements made by the purchaser at the administrator's sale, the master reported, and the court rendered a final decree reaffirming the former decree and reciting that the purchaser from the administrator consented to the rendering of the interlocutory decree; the court also stated the account, and decreed the amount the tenants in common should pay the purchaser at the administrator's sale: *Held*, that the purchaser could not question the fact that he assented to the interlocutory decree. Where a decree appears, from recitals, to be assented to, it is not necessary that evidence of the consent should be preserved in the record. If not satisfactory, the party dissatisfied should preserve the evidence on which the recital is based, and then it can be reviewed.

2. ACCOUNT—*rents—improvements.* In such a case, where the master is required to ascertain the rental value of a piece of land for a long period

360      HOLDERMAN *v.* GRAHAM *et al.*     [Sept. T.,

Opinion of the Court.

of time, he should receive proof as to the rental value for each year, and not a mere average; as interest must be computed on the rents, the value for each year should appear, and it was error for the court to average the interest on the rents. And where an occupant was charged with rents, and allowed for improvements, and the fences on his own land afforded the means of enclosing the land on which he was charged rents, it was error to charge full rents for the land and allow nothing for the use of his fences.

3. It would not, in such a case, be proper to allow for improvements made after the account was ordered, even if the occupant made them under the supposition that they were placed on his own land, but in which he was mistaken.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HARRIS & DICKEY, and Messrs. BOYLE & RICHOLSON, for the appellant.

Mr. BENJ. OLIN and Mr. P. A. ARMSTRONG, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Grundy county, by appellees against the appellant and other defendants, for the partition of the west half northwest quarter sec. 17, T. 33, R. 6, in said county, together with several other tracts of land, and for the setting aside of an administrator's sale of said tract of land to the appellant, made by the administrator of Timothy Horrom, deceased, for the payment of the debts of his estate, on the 9th day of May, 1853, for the sum of $800.

The bill prayed that the sale be set aside subject to the refunding to appellant of the $800 purchase money, with interest, taxes, and the value of improvements made by him, after deducting the rents and profits of the land.

On the 8th day of March, 1869, an interlocutory decree was rendered, ordering partition, appointing commissioners to make it, and setting aside the administrator's sale, and requiring the appellant to execute to the heirs of said Horrom, deceased, a

deed of said tract of land, upon the conditions that he be first reimbursed said sum of $800, with interest thereon from the said 9th day of May, 1853, and also the amount of taxes on the land paid by him since the year 1853, and interest thereon, and also the value of the improvements thereon made by him, subject to his accounting to the heirs for the value of the rents and profits, and for the use and occupation of the land from May 9th, 1853, and interest thereon, and further ordering that these matters be referred to the master in chancery to take proofs thereon and report the same to the court.

Proofs were subsequently taken by the master and reported to the court.

Afterwards, at the November term, 1870, a final decree was rendered, which, after reciting at large the contents of the former interlocutory decree, declares " each and every the adjudications, findings and orders in said interlocutory decree, are confirmed, and are to be taken and considered as if herein inserted at length and in full, and to all which all of said defendants assented ;" and the decree adjudges, that the appellant be charged with use and occupation of the land in the sum of $2440.56, and that he be credited with the sum of $2540.56 for purchase money, taxes, interest, and improvements made upon the land, and that upon the payment to him by the heirs of Horrom of the difference, $100, he make to them a deed of the land.

The appellant in the first place seeks to question the propriety of the interlocutory decree setting aside the administrator's sale, but he is precluded from so doing, as that decree was by his consent, as appears by the recitals in the final decree.

But it is said this recital or finding of the court was excepted to, and it is insisted that there must be proofs preserved in the record, showing that the court was warranted in such finding. The contrary has been held by this court. When the court below finds that all the material allegations have been proved, we will, in the absence of anything rebutting the finding of the

court, presume the evidence warranted the finding. *Bree* v. *Bree*, 51 Ill. 367.

This court has repeatedly held it to be sufficient for the decree to recite the facts on which it is founded, without any further preserving in the record of the evidence on which the facts were found. The appellant did except generally to the findings of the court, but had he wished to take exception to this particular finding, as to the fact of his assent to the interlocutory decree, he should, to make it of avail, have preserved the evidence upon that point by a bill of exceptions, and then we could have passed upon the sufficiency of the evidence to establish the fact as found, and determined whether the court erred or not in its finding. The fact that the assent does not appear by the interlocutory decree itself, we do not think sufficiently rebuts the finding.

It is next objected that the court erred in finding that the purchase money and taxes and interest thereon, and the value of the improvements amounted only to the sum of $2540.56.

The appellant insists this sum should have been $2820.72.

The two allowances on both sides were of the sums in gross, without any items being specified. The sum of $90, we think, might properly have been deducted from the appellant's claim, it being money expended in improvements subsequent to the interlocutory decree, and subsequently to the commissioner's sale of the land to Booth, which took place May 1, 1869.

Under the decree, an account was to be taken of improvements already made, and not of any to be made afterwards. They appear to have been innocently made by the appellant under a mistake as to the line, he supposing the house stood upon his own land; yet they should not have been allowed under the decree.

There is no controversy as to the amount to be allowed for purchase money, taxes and interest, and but little as to the improvements or their value, and not much conflict of testimony. From an examination of it as it now appears, without going into details, we think that the sum of $2762.72 should

have been allowed to the appellant, with a deduction from it of the amount of the value of whatever fencing was upon the land at the time appellant went into possession, and which he appropriated to his own use.

The evidence as to that fencing is quite unsatisfactory, there being testimony that there were no improvements at that time except about four acres broke, and other testimony that there was fencing on it equaling the amount the appellant put upon it; and, as the cause is to be remanded, we will not undertake to determine in regard to the amount of that item.

It is again urged, that the court erred in decreeing that appellant be charged with the sum of $2440.56 for the use and occupation of the premises.

The testimony upon this subject was very contradictory, and was so upon several different points.

According to the showing of the argument of the counsel for the appellees, there are eight witnesses on their behalf, whose average estimate of the value to Holderman, of the use of the land for sixteen years, commencing with 1853, is about $1.53 per acre per year, amounting, for the sixteen years, to the sum of $1958.40, and it is said the difference between this and the sum of $2440.56, found by the court, would be overcome by the interest to be allowed to the heirs.   But the proofs do not furnish any satisfactory data upon which to compute interest, as there is no estimate of the rent for the years severally.

There appears to have been a wide difference between the value of the land at the commencement and at the termination of that period of time, so far as a purchase at public sale may be an index of value, as Holderman paid $10 per acre for it, at the administrator's sale, and Booth $40.50 at the commissioner's sale, and evidently the rent should be much less for the earlier years in the series upon which interest would run longest, than for the later ones.

Again, the value of the use of the land to Holderman was not the proper measure of the rent with which to charge him. The estimates of the witnesses are mostly as to the value of the

364          HOLDERMAN *v.* GRAHAM *et al.*     [Sept. T.,

Opinion of the Court.

use of the land to him.   But the inquiry should have been as to the fair rental value of the land in the condition it was when Holderman took possession of it, uninclosed, and without any buildings upon it, and not what was the value of it to Holderman.

In order to realize rents and profits from the land, it would have been necessary to have enclosed it with a fence, and to have fenced the Ottawa·road, running through it, which would have required 640 rods of fence.   Holderman having lands surrounding this, which were already enclosed with a fence, did not need to fence this land himself, except the Ottawa road, in order to its profitable use by him.   It was by reason of his own fences that the land was of use to him, and to charge him with the value of such use, to him, would be making him pay for the use of his own fences.   At least, if he is to be charged with rent on such a basis, he should be allowed a deduction from it of the interest on the cost of the fences necessary for the use of the land.

The above estimate is, on a partial view of the evidence, most favorable to the appellees.

On the other hand, a large number of witnesses testify that the use of the land for sixteen years, commencing with 1853, would not have been worth more than the fencing around the land, fencing the Ottawa road, and paying the taxes.

We are satisfied, from a consideration of all the proofs in the case, that, according to the weight of the whole testimony, there should be a considerable reduction made from the sum found and decreed by the court for the use and occupation of the land.

Having suggested, to this extent, the principles which should govern in taking the account, the decree, so far as respects the statement of the account, and the sums found due and to be paid, will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*