## MARY AGNES KING

*v.*

## GERTRUDE KING *et al.*

*Opinion filed April 17, 1905.*

1. WILLS—*rule where estate is devised without words of inheritance.* If an estate is devised to a person without the use of words of inheritance the devisee will take a fee simple estate, provided a less estate is not limited by express words in a subsequent part of the will or by construction or operation of law.

2. SAME—*words "in case of her death without issue" construed.* The words "in case of her death without issue" mean "without having had issue," and hence do not operate to limit a preceding devise to a life estate where the devisee has or has had children.

3. SAME—*when preceding devise is limited to a life estate.* A devise without words of inheritance is limited to a life estate by a subsequent clause of the will providing that if the devisee dies leaving one or more children the property shall go to them when of age and in case of leaving no children the property shall be divided among named persons.

4. SAME—*when will does not refer to death of devisee before testator's death.* A will devising property to the testator's daughter, then unmarried, and providing that if she died leaving one or more children the property was to go to them when of age or if she left no children to go to named persons, does not mean that, to make the devise to the children effective, the death of their mother must precede that of the testator.

5. MORTGAGES—*word "warrant" in deed implies full covenants of warranty.* A mortgage reciting that the mortgagors "mortgage and warrant" the premises must be construed the same as though covenants of seizin, right to convey, against encumbrances and for quiet enjoyment were fully written therein, and if the mortgagors have but a life estate, foreclosure as for breach of covenants is authorized, if provision is made in the mortgage for such proceedings in case of breach.

6. SAME—*mortgagor may waive privilege of redemption.* A mortgagor who consents, in writing, to the sale of her life estate and that the premises be sold in fee simple and the value of her life estate computed by life tables and set off to her, subject to the amount due from her under the mortgage, is estopped to complain that the decree was erroneous in providing for a sale of her life estate without the right of redemption.

7. JUDGMENTS AND DECREES—*facts recited are presumed proved in absence of certificate of evidence.* In the absence of a bill of exceptions or certificate of evidence the facts recited in the decree must be held to have been found upon sufficient evidence, and a decree, appearing from its recitals to have been entered by consent, will not be reviewed unless the evidence is preserved.

8. APPEALS AND ERRORS—*when a party cannot question decree.* One who consents to the entry of a decree or accepts the benefits thereof is estopped to prosecute an appeal or writ of error to reverse the same.

9. EQUITY—*equity has jurisdiction to convert real estate of infants into personal property.* A court of equity, by virtue of its general jurisdiction over the estates of infants, has power to authorize the conversion of the real estate of infants into personalty, when clearly for their interests.

10. SAME—*equity having acquired jurisdiction may retain it to do complete justice.* A court of equity having rightfully obtained jurisdiction of a cause may retain it and determine all questions arising in the cause, in order to do complete justice.

11. SAME—*when jurisdiction cannot be questioned in court of review.* An objection that the court had no jurisdiction of the cross-bill in a foreclosure proceeding, upon the ground that its purpose was to obtain the construction of a will in which no question of a trust was involved, cannot be raised for the first time in a court of review.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. H. M. TRIMBLE, Judge, presiding.

This is a writ of error, sued out from this court on November 23, 1904, for the purpose of reviewing a decree entered by the circuit court of LaSalle county on November 1, 1899, and certain orders entered, in pursuance of proceedings under said decree, in December, 1899, and February and March, 1900.

The material facts are as follows: On September 26, 1899, Michael Noonan filed a bill in the circuit court of LaSalle county against the plaintiff in error, Mary Agnes King, and her husband, Fred R. King, to foreclose a mortgage, executed by plaintiff in error and her husband upon the north half of the south-west quarter of section 29 town-

ship 34, north, range 3, east of the third principal meridian, in LaSalle county, to secure a judgment note for $2000.00, executed by plaintiff in error and her said husband, payable to the order of Michael Noonan three years after date, with interest at six per cent per annum after date, payable annually. In the mortgage Mary Agnes King, formerly Galvin, is described as the only child and heir-at-law and sole devisee of William H. Galvin, deceased. The mortgage recites that the mortgagors "mortgage and warrant" to Michael Noonan, to secure said note, the property above described. The mortgage provides that, in case "of a breach of any of the covenants or agreements herein contained, then, and in such case, the whole of said principal sum and interest, secured by the said one promissory note in this mortgage mentioned, shall thereupon at the option of the said mortgagee, his heirs, executors, administrators, attorneys or assigns, become immediately due and payable; and this mortgage may be immediately foreclosed to pay the same by said mortgagee," etc. The parties made defendants to the foreclosure bill were plaintiff in error, and her husband, and their three minor children, Gertrude, Florence and Harold King, and all the persons mentioned in the will of the said William H. Galvin hereinafter referred to, and all the persons, who would have been heirs of said William H. Galvin, deceased, had he died intestate, and had said plaintiff in error died without issue. Default was entered against all the adult defendants, including plaintiff in error and her husband, at the October term, 1899, and Lester H. Strawn was appointed guardian *ad litem* for the three minor children of plaintiff in error above named, and B. F. Brady was appointed guardian *ad litem* of two other minor defendants, to-wit, William Galvin and Edward Galvin.

On October 12, 1899, the three minor children of plaintiff in error, to-wit, Gertrude, Florence and Harold King, by their guardian *ad litem,* Strawn,·filed a cross-bill, making parties defendant thereto plaintiff in error and her husband,

Michael Noonan, the minors, William Galvin and Edward Galvin, and all the other parties above referred to, who were defendants to the original bill. Michael Noonan filed an answer to the said cross-bill, and an answer was filed by the guardian *ad litem* of the minors, William and Edward Galvin, but default was taken against all the other defendants to the cross-bill, including plaintiff in error and her husband. The cross-bill set up the death of William H. Galvin, and his will, and the codicil thereto, and avers that the farm owned by said testator in the town of Wallace in LaSalle county was the same as that described in the original bill as having been mortgaged to Michael Noonan. The cross-bill further alleges that William H. Galvin died testate on October 10, 1891, and that his will was admitted to probate in LaSalle county on October 23, 1891. By the terms of the will, as set out in the cross-bill, the testator provided as follows: "First—I give, devise and bequeath unto my daughter, Mary A. Galvin, (now Mary A. King, plaintiff in error), the farm owned by myself in the town of Wallese, county of LaSalle, State of Illinoise. * * * Second—I further direct that my debts and necessary funeral expenses shall be paid from moneys now on deposit in the National City Bank of Ottawa, * * * the residue of such moneys to revert to my daughter M. A. Galvin; when she becumbs of age she will allso have place a cooping around her mother's grave out of some of money; and, in case of her death without ishure, then all of the above described property, real and personal, revert back to lawful heirs. * * * Fourth— And, in case of the death of dauther, and she left one or more children, then the property goes to them when of adge, and, in case no children, then property will be divided as follows, to-wit, to my sister, Elen Burk, for the benefit of her two sons Will and Ed Burk the one six of the intress in my father estate left by him to me. Also, to July Welch, my sister, for her sole benefit one thouserand dollars, $100.00. To my brother, Peter Galvin, for the benefit of his two sons,

one thouserand dollars, $100.00, when they become of adge to be held in trust for them; to my brother, John Galvin, one thouserand dollars for the benefit of his son Bay Galvin when of adge; to my sister, Magie Galvin, five hundred dollars, $500.00, and, in case of her death without ishure, then it revert back to the lawful ayers. To my sister, Elen Burk, five hundred dollars, $500.00. To my niese, Mary McCabe, one hundred dollars, $100.00. Elisa and Allise McCabe each one hundred dollars, $100.00, to my neises Bridget and Mary Welch, one hundred dollars each $100 for their one ouse; to Mary E. Graham, my niese, one hundred dollars $100, and the balance of property to be divided among my brothers and sisters, share and share alike."

Afterwards on July 2, 1890, the testator made a codicil to his will, in which he appointed Margaret Galvin, his sister, and one Thomas McLaughlin, "guardians over my daughter, Mary Agnes Galvin, to have charge of her, and her incume, and place to the best use for her benefit, until she becomes the adge of twenty-three years (23)."

The cross-bill further avers that Mary A. Galvin, daughter of William H. Galvin, was born October 30, 1875, and was married to Fred R. King on October 15, 1894; that cross-complainants, Gertrude King, four years old, Florence King, three years old, and Harold King, born August 30, 1899, were the only issue of said marriage; that William H. Galvin left no widow, but left Mary A. Galvin, now Mary A. King, his only child and heir-at-law; that he left no father or mother, but left certain brothers and sisters and their descendants, who are named in the bill. The cross-bill further avers that, under the will of William H. Galvin, Mary A. Galvin, now Mary A. King, became vested with a life estate only in the real estate, described in the bill of Michael Noonan, and that, when Mary A. and Fred R. King made the mortgage to Noonan, said Mary A. King had only a life estate in the property, and that the remainder belonged to the cross-complainants, Gertrude, Florence and Harold

King, the children of Mary A. King. The cross-bill further alleges, that Mary A. and Fred R. King have no other property, and no means to pay taxes on the property mortgaged, or to pay anything on the debt to Noonan; that the farm mortgaged is level and swampy, and cannot be cultivated, unless drained of its water; that it has no improvements except a fence, and that dilapidated; that it has no outlet for drainage; that it will be necessary, in order to drain it, to form a drainage district, or to join with the owners of adjoining farms and construct a large drainage canal at great expense; that cross-complainants are in danger of losing their entire interests, unless the court will order the premises sold and that part, belonging to cross-complainants, to be placed in the hands of a trustee for them; that Mary A. and Fred R. King have no means or income, or prospects of the same; that neither is engaged in employment or business, or earning anything, and that Fred R. King has no trade or occupation, but is simply living on the property of his wife, which is exhausted.

On November 1, 1899, the cause was heard on the original bill and answers and replications, and on the cross-bill and answers and replications, and also upon the evidence heard in open court, all of the adult defendants to the original bill having been defaulted, and all the adult defendants to the cross-bill having been defaulted, except Michael Noonan. On that day, November 1, 1899, the court rendered a decree, in which it was recited as follows: "And the court having heard the evidence in open court, and the arguments of counsel for their respective parties, and the court being now fully advised in the premises, doth find that the court has jurisdiction of the subject matter and the parties in this cause; that both the complainant in the original bill and the complainants in the cross-bill are entitled to relief in a court of equity; that all the allegations in said cross-bill contained are true as therein stated." The decree then finds that, under the will of William H. Galvin, plaintiff in error became vested,

at the time of her father's death, with an estate for and during the term of her natural life, and no more, in and to the mortgaged property, and that the remainder of said estate in said land was the property of the complainants in the cross-bill, Gertrude, Florence and Harold King. The decree, after finding the facts in regard to the death of the testator, and the probate of his will, and the marriage of plaintiff in error, and the birth of her children above named, and that there have been no other children born to her, finds that the estate of William H. Galvin was finally settled in the probate court of LaSalle county on January 22, 1894, with his debts paid in full. The decree then further finds, that plaintiff in error, and her husband, executed said mortgage to Michael Noonan, "and that there is now due on said note, principal sum and interest, the sum of $2111.33; and that the said Mary Agnes King and the said Fred R. King on the same day, by their mortgage deed of that date, purported to convey to the said Michael Noonan in fee simple the aforesaid real estate to secure the payment of the principal sum and interest above mentioned," etc. The decree also finds, "that the said Mary Agnes King and the said Fred R. King mortgaged said real estate to the said Michael Noonan with full covenants of warranty of the title to said real estate, but that the said Mary Agnes King and the said Fred R. King had no right or power to convey, at any time, more than a life estate for the life of the said Mary Agnes King, and that the interest in said real estate, so mortgaged as aforesaid, was no more than a life estate for the life of the said Mary Agnes King, and that the said complainant in the original bill, Michael Noonan, is entitled, by reason of a breach of said covenants of warranty, to foreclose his said mortgage, and to have the life estate of the said Mary Agnes King in said mortgaged premises sold for the payment of his said debt." The decree then finds the facts above stated in regard to the insolvency of plaintiff in error and her husband, and the character of the premises as to improvements and drainage, etc. The de-

cree also finds that neither the plaintiff in error, nor her husband, nor her children, have any means or resources with which to make any improvements, or to meet the drainage tax, or in fact the general taxes upon said land, "and that it is for the interest of all parties concerned that said premises be sold; that the net proceeds of the sale be apportioned between the said life estate of the said Mary Agnes King and the remainder in said premises, the former to be subjected to said mortgage indebtedness to the said Michael Noonan, and the latter to be placed in the hands of a guardian, or trustee, to be invested for the benefit of the complainants in the cross-bill;" that the premises cannot be divided among the parties without material injury, and that it is for their interest that the same be sold in bulk as one tract.

The decree further finds, "that the said Mary Agnes King has filed her consent in writing in this cause that the order of sale, to be entered herein, may provide for the sale of her said life estate, and that the said premises may be sold in fee simple, free of all conditions, limitations or restrictions, and that the present value of her life estate may be computed by the life tables, commonly known as the Northampton tables, and that her portion of said estate may be set off to her in cash, subject, however, to the amount due to the said Michael Noonan, as aforesaid." The decree thereupon ordered, that plaintiff in error, and her husband, should pay, within a certain number of days, to Michael Noonan, or his solicitor, said sum of $2111.33, with interest, etc., and the costs, including $100.00 for solicitor's fees, and in default that the premises above described be sold for cash to the highest bidder without redemption, and that upon approval of the sale the master in chancery execute to the purchaser a good and sufficient conveyance in fee simple of said premises; that the master retain his fees, disbursements and commissions, and pay the costs and solicitor's fee and fees of the guardians *ad litem;* that he compute the value of the life estate of plaintiff in error, and pay to Michael Noonan therefrom $2111.33, with interest,

and the balance, if any, of the value of said life estate, to the plaintiff in error, and file his receipts for said payments together with his report of sale to this court, and bring the remainder of the money into court to abide the further order thereof; and that the purchaser, on the execution of the master's deed, be let into possession of the property.

On December 22, 1899, the court entered an order, approving the master's report of sale, which realized $4600.00, a higher price than any value placed upon the premises by any of the witnesses upon the hearing of the cause.

On December 23, 1899, the master filed a report of partial distribution, showing that he had paid out of the total proceeds of sale, to-wit, $4600.00, certain amounts and that of such proceeds, after paying the costs, expenses of sale, and fees of the guardians *ad litem,* he had paid to Michael Noonan, mortgagee, $2120.13, and to Mary A. King balance of life interest, $961.21, leaving a balance on hand of $1192.96. To the master's report were attached receipts from the parties, to whom these various amounts were paid, and, among others, was the following receipt, signed by the plaintiff in error, Mary A. King, to-wit: "Received this thirteenth day of December, A. D. 1899, of Sidney R. Blanchard, master in chancery of said court, the sum of $961.21 to apply on my distributive share of the proceeds of sale in the above entitled cause." On February 26, 1900, a petition was filed by Daniel R. Burke as guardian of Gertrude, Florence and Harold King, setting up his appointment by the probate court as such guardian, and asking that the proceeds of the sale be apportioned between the life estate of plaintiff in error, and the remainder in said premises, being the interest of the minors; and that the latter be placed in the hands of the guardian, the cash value of the remainder to be brought into court subject to the further order of the court; and stating that said master has on hand, belonging to said minors, $1162.96, and praying that he be directed to pay over said amount to the petitioning guardian. And

thereupon an order was entered, in which it was recited as follows: "And it appearing that the master has $1162.96, that said funds constitute an accumulative trust for the complainants in the cross-bill, Gertrude, Florence and Harold King, and such other children as may be born to Mary Agnes King, and that Daniel R. Burke is the guardian, it is ordered that the said master in chancery pay over said sum to said Daniel R. Burke as such guardian, and take his receipt therefor." On March 9, 1900, the master made a report of final distribution, showing that he had paid out certain amounts amounting to $1192.96, including said sum of $1162.96, and presenting receipts for the amounts so paid, which said report of distribution on the same day was approved by the court.

JAMES R. GLASS, and WARREN B. WILSON, for plaintiff in error.

LESTER H. STRAWN, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The mortgage, executed by the plaintiff in error and her husband to Michael Noonan, purported to convey to the mortgagee a fee simple title in the premises mortgaged; but the decree of the court below found that the plaintiff in error, when she executed the mortgage, had only a life estate in the mortgaged premises. The first question, therefore, which will be considered, is whether or not the will of William H. Galvin was properly construed by the court below, as vesting plaintiff in error with a life estate only. She now claims before this court that, upon a proper construction of the will, she is entitled to a fee simple estate, and that for that reason the decree of the circuit court was erroneous.

*First*—In the first clause of the will the testator gives, devises and bequeaths "unto my daughter, Mary A. Galvin,

the farm owned by myself in the town of Wallese, county of LaSalle," etc. This clause, standing by itself, devised to Mary A. Galvin, now Mary A. King, the fee to the farm in question, which was the farm upon which she executed the mortgage above mentioned. It contains, however, no words of inheritance, that is to say, it simply devises the farm to Mary A. Galvin alone, and not to Mary A. Galvin, and her "heirs and assigns." If an estate is devised to a person without the use of such words of inheritance, the devisee will take in fee simple, unless a less estate is limited by express words in a subsequent part of the will, or by construction, or operation of law. (*Metzen* v. *Schopp,* 202 Ill. 284, and cases there cited). The question then arises whether the fee simple estate, thus devised to the plaintiff in error, was reduced to an estate less than a fee by any of the clauses of the will, following and subsequent to the first clause.

By the second clause of the will the testator provides, as to his daughter, Mary A. King, that, "in case of her death without ishure [issue], then all of the above described property, real and personal, revert back to lawful heirs." It is conceded that Mary A. King, formerly Mary A. Galvin, did not die without issue, but survived her father, and after his death married, and has three children, to-wit, the cross-complainants herein, Gertrude, Florence and Harold King. The words, "in case of her death without issue," or "in case she dies without issue," have been construed by this court to mean "without having had issue,—not without surviving issue." (*Field* v. *Peeples,* 180 Ill. 376; *Voris* v. *Sloan,* 68 id. 588; *Smith* v. *Kimbell,* 153 id. 368). Therefore, it may be said here, as was said in *Field* v. *Peeples, supra:* "No further attention will, therefore, be given to that clause in the will."

By the fourth clause of the will, however, the testator provides as follows: "And in case of the death of dauther [daughter] and she left one or more children, then the property goes to them when of adge, and, in case of no children,

then property will be divided as follows, to-wit, to my sister, Elen Burk," etc. By the use of the words, "and in case of the death of dauther and she left one or more children, then the property goes to them when of adge [age]," it was clearly the intention of the testator that the daughter, the present plaintiff in error, should have the life estate only in the property, and that the remainder, after the expiration of the life estate, should go to her children. In *Johnson* v. *Johnson,* 98 Ill. 564, the testator gave and bequeathed to his daughters a certain quantity of land to be divided equally, and provided as follows: "In case of the death of either of the above daughters without issue, the share of the deceased shall revert to the remaining daughter. If either die leaving children, deceased's share shall be divided equally between her offspring;" and we there said (p. 570): "In *Bergan* v. *Cahill,* 55 Ill. 160, it was expressly held that a devise of the fee may be restricted by subsequent words in the will, and changed to an estate for life. Here, the testatrix, after devising the property to her two daughters, declares that, if either die leaving children, the share of the daughter so dying shall descend to her offspring, and be divided equally between them. This is a plain and unambiguous declaration, and means, in as plain terms as the English language could well express it, that the daughters are to hold this land for life, and upon their death it shall descend to their children, who shall take the fee." The case of *Johnson* v. *Johnson, supra,* is on all-fours with the case at bar. Here, as there, the will refers to the two contingencies—one, where the daughter dies leaving no children—in which case the property is to be divided among the sisters of the testator and others,—the other, where the daughter dies leaving children, in which case the property is to go to them when of age. By the provision that, in case the daughter should die and leave one or more children, then the property should go to them when of age, the testator did not intend to refer to the death of his daughter before his own death.

In *Furnish* v. *Rogers,* 154 Ill. 569, it was held that a devise of property to a niece, followed by the words, "all of which is to go to her children should she marry; if she should die childless, then to be divided," etc., creates a life estate in such niece. (See also *Bradsby* v. *Wallace,* 202 Ill. 239; *Schaefer* v. *Schaefer,* 141 id. 337).

Plaintiff in error refers to the case of *Kohtz* v. *Eldred,* 208 Ill. 60, in support of the contention that this will gave the fee simple title to plaintiff in error. The argument is, that the language, used in the fourth clause of the will, refers to the death of plaintiff in error prior to the death of the testator. If the true meaning of the language is as thus contended for, then, under the doctrine of the case of *Kohtz* v. *Eldred, supra,* the gift over to the other beneficiaries named in the will is merely substitutionary, depending upon the contingency of the death of the primary devisee in the lifetime of the testator, and designed to prevent a lapse, and, as the plaintiff in error survived her father, the testator, the contingency, upon which the other beneficiaries named in the will were to take, could never happen, and the fee would be vested in plaintiff in error upon the death of the testator. The case, however, of *Kohtz* v. *Eldred, supra,* has no application to the case at bar. In that case, the testator gave his property to his executor in trust for his two children, and provided that, if either should die leaving no issue surviving, then the share of such deceased child should go to the survivor, and, if both should die leaving no issue surviving, that the estate should be divided as provided; and we there held that this came under the rule that, where there is a devise *simpliciter* to one person, and, in case of his death, to another, the words refer to a death in the lifetime of the testator. This rule, however, does not apply when the will mentions or indicates a time other than the death of the testator, as is the case with the will of William H. Galvin.

"The rule of construction, by which a devise to A in fee, followed by a provision that, if he die without issue, the

lands are to go to B, is commonly taken to refer to the death of A during the testator's life, has no application where the prior estate is one for life in the first taker, with a vested remainder in his children." (*Hollister* v. *Butterworth,* 71 Conn. 57; *Mullarky* v. *Sullivan,* 136 N. Y. 227; 17 Am. & Eng. Ency. of Law,—2d ed.—p. 574, and note). "The rule that, where there is a bequest to one person absolutely, and, in case of his death without issue, to another, the contingency referred to is a death in the lifetime of the testator, does not apply when a point of time, other than the death of the testator, is mentioned, to which the contingency can be referred, or to a case where a life estate intervenes, or where the language of the will evinces a contrary intent." (17 Am. & Eng. Ency. of Law,—2d ed.—p. 574, note; *Matter of Denton,* 137 N. Y. 428; *Bradsby* v. *Wallace,* 202 Ill. 239; *Fussey* v. *White,* 113 id. 637; *Summers* v. *Smith,* 127 id. 645; *Jones* v. *Moore,* 96 Ky. 273; *Smith* v. *Kimbell,* 153 Ill. 368; *Budge* v. *Walling,* 45 N. J. Eq. 10).

At the time the will of William H. Galvin was made, his daughter, the plaintiff in error, was only fifteen years old, and it was evident that he did not contemplate the contingency of her death before his own. He provided that she should have certain money then on desposit in the bank, and out of it should place a coping around her mother's grave. He also appointed guardians for her, showing that he expected his death to occur before hers and before it should be determined whether she should die, leaving children, or not leaving children. For the reasons above stated, we are of the opinion that the court correctly construed the will in holding that plaintiff in error was only entitled to a life estate in the property.

*Second*—The decree is said to be erroneous for the alleged reason that, although based upon an original bill to foreclose a mortgage, it cannot be sustained as a decree of foreclosure. Two reasons are urged in favor of this contention; one is, that the note and mortgage were not due

215–8

when the bill was filed; and the other is that the decree provides for a sale without redemption.

The decree finds upon its face, that the principal and interest specified in the terms of the note, secured by the mortgage, are due. The mortgage, by the use of the words, "and warrants," must be construed the same as if full covenants of seizin, good right to convey against encumbrances, of quiet enjoyment, and general warranty were fully written therein. (Conveyance act, sec. 11; 1 Starr & Curt. Ann. Stat.—2d ed.—p. 924).

The mortgage also provides that, in case of a breach of any of the covenants or agreements contained therein, the whole of the principal and interest, secured by the note, should thereupon, at the option of the holder, become immediately due and payable. There was a breach of the covenant contained in the mortgage, because the covenant was that the mortgagor held a fee simple title, while, under a proper construction of the will of William H. Galvin, the mortgagor, the present plaintiff in error, had only a life estate, instead of a fee simple title. The decree finds that plaintiff in error and her husband mortgaged the property to Noonan with full covenants of warranty of the title to said real estate, but that she and her husband had no right or power to convey more than a life estate for the life of plaintiff in error, and that Michael Noonan, the complainant in the original bill, was entitled, by reason of a breach of such covenants of warranty, to foreclose his mortgage.

The decree also finds "that the said Mary Agnes King has filed her consent in writing in this cause that the order of sale, to be entered herein, may provide for the sale of her said life estate, and that said premises may be sold in fee simple, free of all conditions, limitations or restrictions, and that the present value of her life estate may be computed by the life tables, commonly known as the Northampton tables, and that her portion of said estate may be set off to her in cash, subject, however, to the amount due to the said Mich-

ael Noonan as aforesaid." Although, under other circumstances, the decree might be erroneous as providing for a sale of plaintiff in error's life estate without redemption, yet inasmuch as the decree finds that she consented to such sale, she is estopped from now questioning the validity of the decree in that respect. A mortgagor may waive his privilege of redemption. In *Frank* v. *Bruck,* 4 Ill. App. 627, the late Mr. Justice BAILEY, in delivering the opinion of the Appellate Court, said: "It appears upon the face of the decree that Barbara Frank consented to an absolute sale of the mortgaged premises. This recital of the decree is conclusive, and establishes beyond controversy the fact that such consent was given. She cannot now be permitted to withdraw or question such consent, or complain of the provisions of the decree entered in pursuance thereof."

There is no bill of exceptions, or certificate of evidence, in the record in this case, as brought before this court by the writ of error, issued herefrom. This being so, the facts recited in the decree must be held to have been found by the chancellor upon sufficient evidence. In *Schuler* v. *Hogan,* 168 Ill. 369, we said (p. 383) : "As there is no bill of exceptions or certificate of evidence in the case, we cannot say that the findings in the decree are not correct. Where a decree recites that it is by consent, it will be presumed that it is upon sufficient evidence; and where the evidence is not preserved in the record, either by a bill of exceptions or by a certificate of evidence, the facts recited in the decree must be taken to have been found upon sufficient evidence.—*Holderman* v. *Graham,* 61 Ill. 359; *Davis* v. *American and Foreign Christian Union,* 100 id. 313; *Rhoades* v. *Rhoades,* 88 id. 139; *Brown* v. *Miner,* 128 id. 148."

In *Richardson* v. *United States Mortgage Co.* 194 Ill. 259, we said (p. 264) : "There is no certificate of evidence in the case; and it is a well settled rule that, where the evidence is not preserved in the record either by a bill of exceptions or by a certificate of evidence, the facts recited in

the decree must be taken to have been found upon sufficient evidence." (See also *Knickerbocker* v. *McKindley Coal Co.* *172* Ill. 535).

Inasmuch as there is nö certificate of evidence in this record, and the decree finds that the amount of the debt was due and unpaid, and also finds that the decree was entered by consent, we will presume that there was sufficient evidence, presented upon the hearing below, to justify the chancellor in making these findings. ·Where a decree appears from recitals to be assented to, or to be made by consent, it is not necessary that evidence of the consent should be preserved in the record, but the party, disputing the same, should preserve the evidence, on which the recital is based, and then it can be reviewed. (*Holderman* v. *Graham,* 61 Ill. 359). It is furthermore settled by the decisions of this court that, where a decree has been rendered by consent, the parties so consenting cannot appeal from such decree, nor assign error upon it. "It is the general doctrine that such a decree is not reversible upon appeal or writ of error, or by bill of review, for error." (*Armstrong* v. *Cooper,* 11 Ill. 540; *Knobloch* v. *Mueller,* 123 id. 554; *First Nat. Bank* v. *Illinois Steel Co.* 174 id. 140; *Bonney* v. *Lamb,* 210 id. 95).

It appears also from the order, entered by the court below on December 23, 1899, approving the master's report of distribution of the proceeds of the sale, that $961.21 out of such proceeds were paid to the plaintiff in error, as the balance of the amount realized from the sale of her life estate, after paying off the costs and the amount due upon the mortgage. The receipt of·plaintiff in error over her own signature for this sum of $961.21 is attached to the report so approved. "Where a party accepts the benefit of a decree, he cannot afterwards prosecute error to reverse it; such acceptance operates as an estoppel and may be treated as a release of errors." (*Moore* v. *Williams,* 132 Ill. 591; *Morgan* v. *Ladd,* 2 Gilm. 414; *Thomas* v. *Negus,* id. 700; *Holt* v. *Reid,* 46 Ill. 181; *Corwin* v. *Shoup,* 76 id. 246). While it is true as a general

rule that, in an appellate court, matter, operating as release
of errors, must be set up in a plea to the assignment of er-
rors, yet in the present case such a plea cannot be regarded
as necessary, because the plaintiff in error assigns, as one of
the errors of which she complains, that the court below erred
"in making the order, entered December 23, 1899, approv-
ing the proceedings and distribution by the master therein
approved." The assignment of errors itself upon its face
brings before this court the order of the court below, approv-
ing the master's report, which shows that the plaintiff in er-
ror accepted the $961.21. The payment of the money to the
plaintiff in error, and its acceptance by her, are thus shown
upon the face of the record, and attention is called to it by
the plaintiff in error in her assignment of errors. The fact of
such payment and acceptance could not be more clearly pre-
sented to the court had a plea of a release of errors been filed.

*Third*—Plaintiff in error claims that the court below had
no jurisdiction to entertain the cross-bill. Counsel for the
plaintiff in error seem to take it for granted, that the cross-
bill was for the purpose of making partition of the premises,
and for the purpose of construing the will. It is said that
the bill was not properly one for partition, upon the alleged
ground that the owner of the life estate cannot ask for a par-
tition as against the owner of the remainder. It is also said
that a court of equity will not entertain a bill merely for the
construction of a will, where no question of trust is involved.
We do not think that the cross-bill was primarily a bill to
construe the will, nor can it in any sense be regarded as a
bill for the partition of the property. The cross-bill pro-
ceeds upon the theory that the property was wet and low and
swampy and needed drainage, and that, as the cross-com-
plainants were poor, and had no means, and the plaintiff in
error had no means, with which the necessary drainage could
be secured, or with which the necessary drainage tax or as-
sessment could be paid, a court of chancery had power to
permit a sale of the property to prevent the loss of both the

life estate and the remainder. The power of courts of chancery, by virtue of their general jurisdiction over the estates of infants, to authorize the conversion of their real estate into personalty when it is clearly for their interest, is not only supported by the general current of authority in this country, but is settled by the decisions of this court. (*Hale* v. *Hale,* 146 Ill. 227; *Gorman* v. *Mullins,* 172 id. 349; *Whitman* v. *Fisher,* 74 id. 147). The findings of the decree are to the effect that the complainants in the cross-bill were in danger of having their estate sold for taxes and drainage assessments. The construction of the will was incidental to the relief thus sought by the bill. "Where a court of equity has obtained jurisdiction for any purpose, it is empowered to determine all questions that may arise in the progress of the cause, and do complete justice." (*Harrison* v. *Owsley,* 172 Ill. 629).

We do not deem it necessary to pass any opinion upon the question, whether the allegations of the bill, and the evidence introduced in support thereof as recited in the decree, were sufficient to justify the court in ordering a sale of the estate in remainder, owned by the minors, in order to prevent their property from being lost. The only interest, which this plaintiff in error had in the property, was an interest as life tenant. She is the only party to the suit below, who has sued out the present writ of error. Therefore, she can only complain of that part of the decree, which affects her own interest. So far as the sale of her life estate is concerned, the decree finds, and the finding is conclusive here, that she consented to such sale, and to such sale without redemption. She is, therefore, estopped from complaining of that feature of the decree. She submitted herself to the jurisdiction of the court by filing her consent in writing to the sale, as the decree finds. (*Hess* v. *Voss,* 52 Ill. 472; *Chicago Dock and Canal Co.* v. *Kinzie,* 93 id. 415).

In *Parsons* v. *Millar,* 189 Ill. 107, we said (p. 111) : "The construction of wills in proper cases, falls within a well rec-

ognized head of equity jurisdiction. (*Whitman* v. *Fisher,* 74 Ill. 147; *Longwith* v. *Riggs,* 123 id. 258; *Woman's Union Missionary Society* v. *Mead,* 131 id. 338). The jurisdiction of the court in that regard was not challenged in the court below by the plaintiff in error, and such question can not now be raised for the first time in this court.—*Richards* v. *Lake Shore and Michigan Southern Railway Co.* 124 Ill. 516; *Central Elevator Co.* v. *People,* 174 id. 203." As the plaintiff in error did not challenge the jurisdiction of the court below to entertain this cross-bill, if it be a bill for the construction of the will in question, she cannot raise the question here for the first time. Whether or not the relief asked by the cross-bill in this case was germane to the subject matter of the original bill is a question which is not discussed and has not been raised by either party, and therefore we pass no opinion upon it.

For the reasons above stated, we are of the opinion that the plaintiff in error is not entitled to a reversal under the circumstances presented by this record.

Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*