Frederick H. Meyer, Individually and as Conservator of Adolph W. Meyer, Appellant, v. Ethel Levy et al., Appellees.

Gen. No. 32,519.

Opinion filed June 20, 1928. Rehearing denied July 5, 1928.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellant.

NATHAN SHEFNER and SILBER, ISAACS, SILBER & WOLEY, for appellees; MARTIN J. ISAACS, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Complainant Frederick H. Meyer, individually and as conservator of Adolph W. Meyer, filed on October 5, 1927, his bill against Ethel Levy and Abe Levy, her husband, to foreclose a trust deed to secure the sum of $47,916.70, evidenced by 26 principal notes dated May 12, 1927, payable to bearer, notes numbers 1 to 24, both inclusive, being for the principal sum of $416.66, each due respectively on or before one to 24 months after May 23, 1927, note No. 25 being for the principal sum of $21,250.86 and note No. 26 being for the principal sum of $16,666, both by their terms being due June 23, 1929, with interest at 6½ per cent per

annum from May 23, 1927, until the maturity of each note, payable monthly.

The trust deed sought to be foreclosed was made and executed by the defendants and conveyed to the Chicago Title & Trust Company, as trustee, the following described premises, situated in the City of Chicago, County of Cook and State of Illinois, viz.:

Lots 1 to 6 inclusive and Lot "A" in Neill and Mahnke's Subdivision of Lots 7 to 10 inclusive, in Block 4 in Gardner's 55th Street Boulevard Addition in the North West Quarter of Section 16, Township 38 North, Range 14, East of the Third Principal Meridian, hereinafter for convenience designated as Parcel A.; also

Lots 1 to 11 inclusive and Lots "A" and "B" in Neill and Mahnke's Second Subdivision of Original Lots 1 to 6 inclusive in Block 4 in Gardner's 55th Street Boulevard Addition in the North West Quarter of Section 16, Township thirty-eight North, Range 14, East of the Third Principal Meridian, hereinafter for convenience designated as Parcel B; with the improvements thereon, etc.

The trust deed was made subject to a prior mortgage, securing the payment of $195,000. Among other covenants contained in the trust deed is the following:

"And the grantors Do Further Covenant and Agree that in the event default be made in the payment of said notes, or the interest thereon, at the time and in the manner above specified for the payment thereof, or in case of a breach of any of the aforesaid covenants or agreements, the whole of the indebtedness hereby secured shall thereupon, at the option of the legal holder or holders thereof, without notice, become immediately due and payable, and with interest thereon from said time at seven per cent (7%) per annum shall be recoverable by foreclosure hereof, or by suit at law, or both, * * *."

There was a rider inserted between the first .and second pages of the trust deed, which reads as follows:

"This rider is attached to and expressly made part of that certain trust deed, dated May 12, 1927, by and between Ethel Levy and Abe Levy, her husband, as 'Grantors' and Chicago Title and Trust Company, as 'Trustee,' conveying certain premises in Chicago, Cook County, Illinois.

"It is further covenanted and agreed by and between the parties hereto that the grantors, their administrators, successors and assigns, shall, upon the payment of the sum of Fifteen thousand dollars ($15,000.00) to the holder or holders of principal note No. 26 hereby secured, which sum is to be applied *pro tanto* toward the payment of said principal note No. 26, be entitled to have released from the lien of this trust deed the premises hereinabove described as Parcel B, provided said grantors * * * shall upon such date not be in default in any of the terms, covenants and conditions in this trust deed contained on their part to be kept and performed.

"It is further covenanted and agreed by and between the parties hereto that the grantors * * * shall have the right to deposit with said Trustee herein said sum of Fifteen thousand dollars ($15,000.00) to be applied toward the payment *pro tanto* of note No. 26, and upon such deposit being made with said Trustee herein said Trustee shall be authorized and empowered to release from the lien of this trust deed the premises hereinabove described as Parcel B.

"It is further understood and agreed that the grantors, * * * anything in the trust deed contained notwithstanding, shall have the right to demolish or remove the improvements now located on Parcel B, without accelerating the maturity of the indebtedness by this trust deed secured; *Provided, However,* that said grantors * * * shall not, and they

hereby covenant and agree not to commence the erection of any new structure on or the excavating of said Parcel B until there shall have been paid to the holder or holders of said principal note No. 26 hereby secured the sum of Fifteen thousand dollars ($15,000.00) which is to be applied *pro tanto* toward the payment of said principal note No. 26.''

The bill, *inter alia,* avers a breach of the conditions of the rider to the trust deed in that the defendants without paying the sum of $15,000, as in said rider provided, did wreck the building thereon and excavate the land on Parcel B; that on September 5, 1927, defendants entered into a contract with a mason contractor for the plain and reinforced concrete and cement and brick work for a new building for the contract price of $63,000; the excavation work in said contract he sublet to a third party; that all the foregoing was done without the consent of complainant and without any notice of the doing thereof to him, and without making the payment of $15,000 provided to be made in said rider before excavating for a new building.

Defendants answered the bill admitting the execution of the notes and trust deed and the wrecking of the old building on Parcel B, and that the final wrecking of the building was completed about September 20, 1927, and averring that complainant was aware of defendants' intention to wreck the old building and was informed of the steps taken by defendants for carrying out that purpose; that plans of the new building were exhibited to complainant who was informed that defendants had procured a construction mortgage of $210,000, and that complainant knew and was informed by defendants that the excavating for the new building had commenced, and that he did not object to the work being done.

The answer further admitted the receipt of the notice that complainant had elected to declare the

whole of the indebtedness immediately due and payable under the terms of the trust deed, which notice was as follows:

"Chicago, Illinois,
September 26th, 1927.

"Ethel Levy and Abe Levy,
5107 North Ridgeway Ave.,
Chicago, Illinois.
"Dear Madam and Sir:

"The undersigned has just learned that you have caused to be commenced the excavating of the following parcel of land, situated in the City of Chicago, County of Cook and State of Illinois:

"Lots One (1) to Eleven (11) inclusive and Lots 'A' and 'B' in Neill and Mahnke's Second Subdivision of Original Lots One (1) to Six (6) inclusive in Block Four (4) in Gardner's 55th Street Boulevard Addition in the North West Quarter of Section Sixteen (16), Township Thirty-eight (38) North, Range Fourteen (14), East of the Third Principal Meridian.

"As you know, the trust deed from yourselves to the Chicago Title and Trust Company, as Trustee, dated the 12th day of May, A. D. 1927, and recorded in the Recorder's office of Cook County on the 13th day of May, A. D. 1927, as Document No. 9650904, in Book 24618 at Page 436, conveying the above described and other property, provides among other things that you shall not, and you covenant and agree, not to commence the erection of any new structure on or the excavating of the parcel above described until there shall have been paid the holder or holders of Principal Note No. 26 secured by said trust deed, the sum of Fifteen Thousand Dollars ($15,000.00).

"You are hereby advised that by reason of your default in failing to comply with the above provision, the undersigned has elected to, and does hereby declare the whole of the indebtedness secured by said trust

deed immediately due and payable, and unless the whole of the indebtedness secured by said trust deed is paid three days from the date hereof, foreclosure proceedings will be instituted to foreclose said trust deed.

Very truly yours,
Fred H. Meyer,

*Individually and as Conservator of
Adolph W. Meyer,*
By SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON,
*His Attorneys.''*

Replication was filed to the answer. On November 4, 1927, the bill was taken as confessed as to the defendant Chicago Title & Trust Company, and the cause referred to Roswell B. Mason, master in chancery, to take the proofs of the parties and the testimony of witnesses and report to the court said testimony together with his conclusions of law and fact thereon within 15 days.

On December 6, 1927, the master filed his report, after overruling objections made thereto by defendants, in which he reported *inter alia* that on May 12, 1927, defendants being indebted in the principal sum of $47,916.70, executed their 26 principal promissory notes, as set forth in the trust deed and the bill of complaint, note No. 25 being for the principal sum of $21,250.86 and note No. 26 being for the principal sum of $16,666, both due June 23, 1929, with interest, etc.; that each of said notes had in it the following provision:

''This note is one of a series of twenty-six notes of similar tenor and effect except as to number, denomination and time of maturity thereof, amounting in the aggregate to the principal sum of $47,916.70. The payment of this note as well as all of the other notes of said series is secured by a trust deed bearing even

date herewith to Chicago Title & Trust Company, as Trustee on real estate in the County of Cook in the State of Illinois, and it is agreed that if default be made in the payment of principal or interest on this note or on any of the notes of said series of which this is one at the time and place when and where the same become due and payable, or in case of default in the performance of any of the other terms, covenants, conditions or provisions in said trust deed contained, then at the election of the legal holder or holders hereof the principal of this note together with the accrued interest thereon shall at once become due and payable at the place of payment aforesaid; said election to be made at any time after such default, without notice.'' That notes Nos. 1 to 4, each for the sum of $416.66, had been paid and canceled, and that the complainant was the owner and holder of the remainder of said principal notes, viz., from 5 to 26, both inclusive; that complainant was indebted to the owner and holder of notes Nos. 5 to 26 and that complainant, individually and as conservator of Adolph W. Meyer, is the holder and owner of note No. 26; finds that the defendants executed the notes and the trust deed securing the same in the bill of complaint set forth, setting forth the several covenants and conditions of the trust deed, together with the rider attached thereto; that the title to Parcels A and B were in the defendant Ethel Levy; that in May, 1927, defendants employed an architect and had plans prepared for a new building on Parcel B and that they started demolishing the building on Parcel B in July, 1927; that the demolition of the old building was not entirely completed on September 9, 1927; that the walls were left standing and much debris from the old building remained on Parcel B on September 9, 1927; that on July 26, 1927, Mrs. Levy arranged a loan of $210,000 on the proposed new building, and that thereafter and sometime in the last part of July, in August and early in September, de-

fendants or one of them had several interviews with complainant, who lived some miles from the property in question, the last interview being September 7, 1927; that at these interviews complainant was told by the Levys of their intention to erect a new building on Parcel B, and of their proposed new loan, and he was shown the plans of the building.

The master further reports that there is some difference in the testimony of the parties as to just what was said at these interviews, but that it is perfectly clear from the evidence that neither Mr. nor Mrs. Levy told defendant that the erection of a new structure on Parcel B or the excavation therefor had been commenced; as a matter of fact the excavation for the new structure was not commenced until September 9, and the erection of the new structure was not commenced until September 19; that on September 5, 1927, Mrs. Levy entered into a contract with one P. J. Cullinane for the plain and reinforced concrete work and brick work on the new building on Parcel B; that the contract was dated September 2, 1927; that Cullinane sublet the work of removing debris and excavating for the foundations of the new building to George Callaghan Sons Company; that the latter firm began work on September 9, 1927, with workmen and steam shovel; that they stopped work on September 10, and did not work on September 11 to 14, 1927, but that they resumed work on September 15 with workmen and steam shovel, and completed all the work of removing the debris from the old building, and the entire excavation for the new building on September 17; that the excavating included the excavation of a space 75 feet long by 90 feet wide that had been used as a court for the old building and had never been excavated before; that the subcontractors performed their excavation work, and Cullinane went to work on September 19, 1927, with 12 or 14 men, and continued thereafter for four weeks filling in the concrete foundations for the

new building; that no payment or tender of $15,000 was made by the defendants prior to the doing of the above excavating and foundation work; that the complainant was never told by defendants that the excavating had been commenced, or that the erection of the new structure had been commenced on Parcel B; that the complainant did not waive any of his rights under the trust deed in any way, and he is not estopped to insist on his rights thereunder; that complainant did not make any statement or do any act that induced defendants to employ an architect, or to have plans drawn for a new building on Parcel B, or to finance a new loan, or to let contracts for the new building, or to wreck the old building on Parcel B, or to have Parcel B excavated or to correct a new building thereon; that complainant never said he would wait, nor led the defendants to believe that he was willing to wait, for the payment of the $15,000 until the latter part of September or first part of October; that on September 24, 1927, complainant learned for the first time, from a third party, that the excavation of Parcel B had been completed, and the foundation work had been done on the new building on Parcel B; that September 24, 1927, was a Saturday, and that on the following Monday complainant called upon one of the attorneys who represent him and advised him that the defendants had started the building, and that they had made no proffer of the amount due him under their contract; that his attorney told him that he would write defendants immediately; that on September 26, 1927, the attorneys for complainant sent the defendants the notice heretofore recited; that the notice was received by defendants September 27, 1927; that at that time defendants had already incurred on their new building about $14,000 architect's fees, about $18,000 cost of proposed new loan, and had let contracts amounting to over $160,000 for the new building; that on September 30, 1927, there was a meeting at the office of the

attorneys for complainant, at which meeting there were present the defendants and their attorney, and the complainant and one of his lawyers; that at this meeting complainant's attorney asked for $47,000; that the defendants' attorney said "No," and made a tender of $15,000; that complainant's attorney refused to accept this and said that he would accept the entire amount; that on October 1, 1927, Mrs. Levy tendered the complainant $15,000 which he would not accept; that on October 1, 1927, Mrs. Levy tendered the Chicago Title and Trust Company as trustee $15,000, which tender was refused upon the objection of complainant's attorney; that thereafter the money was deposited in the Bank of America for the benefit of complainant; that tender was again made to complainant in open court on October 13, 1927, and again refused, and a monthly payment and interest aggregating $667.30 was tendered to complainant on October 23, 1927, and refused by complainant.

The master further found that commencing and completing the excavation for the new structure on Parcel B, and the foundation work done therefor, heretofore described, without paying the $15,000 provided to be paid in the trust deed, was a clear violation of the provisions of said trust deed, a breach of its covenants, and a default in the performance of its provisions; that complainant elected by his notice to declare the whole indebtedness secured by the trust deed immediately due and payable; that he had the right so to elect; that the whole of the unpaid indebtedness secured by the trust deed became on September 26, 1927, immediately due and payable; and further that the making out and sending of the notice by the attorneys for the complainant was within the scope of their authority, and the entire unpaid indebtedness secured by the trust deed is now and has been ever since September 26, 1927, due and payable, with interest thereon at the rate of 7 per cent per

annum from September 26, 1927; that the tenders above described made by defendants availed them nothing, and that complainant is entitled to maintain this foreclosure suit; that a reasonable, customary and usual fee for the services of complainant's attorney is the sum of $3,500.

The master then stated the account and found that, with complainant's solicitor's fees, there was due and owing to complainant the sum of $50,368.62; and further found that complainant, individually and as conservator of Adolph W. Meyer, has a lien upon all of the premises above described for said last-mentioned sum and interest on the sum of $47,866.62 at the rate of 5 per cent per annum from December 2, 1927, together with his costs of suit, subject and subordinate only, first, to the lien of a trust deed on Parcel A for the amount unpaid on that indebtedness; and second, to the lien of a trust deed on Parcel B in said report described; and the master further found that the defendants are personally liable to complainant for the payment of the said sum of $50,368.62 with interest and costs.

To this report defendants filed objections, which the master overruled.

And in conclusion the master found the equities were with complainant, and that a decree of foreclosure and sale should be entered in accordance with the master's findings.

Defendants filed their exceptions to the master's report before the chancellor, which exceptions were sustained, and on December 17, 1927, the chancellor dismissed the bill for want of equity, and complainant brings the record here by appeal for our review.

Complainant argues for reversal that defendants' breach of the covenant against commencing the excavating for or the construction of the new building without paying the sum of $15,000 entitled complainant to accelerate the payment of the balance due

upon the mortgage, and that the acceleration clause contained in the notes and trust deed is valid and enforceable; that the notice of September 26, 1927, electing to declare the entire balance immediately due and payable sufficiently evidenced complainant's intention to declare the balance of the mortgage due, and that his statements and conduct were in consonance with that intention; that complainant in no way waived the requirement in the trust deed that $15,000 be paid before the commencement of excavating and construction; that defendants were not entitled to any release of Parcel B, for the reason that they were in default in the performance of the covenant to pay $15,000, and that the trust deed and rider must be construed as an entirety and their provisions read together.

We have noted the evidential facts found by the master, and on a careful reading and study of all the proofs we see no reason to disturb the conclusions to which the master arrived or his recommendation that complainant was entitled to a decree of foreclosure in accordance with the prayer of his bill and such findings.

The record discloses that the master heard the testimony of all the witnesses, which the chancellor did not, and therefore the master was better able, than are we or the chancellor, to determine the credibility of the testimony of the several witnesses, and where such testimony was in dispute the master was better able to judge as to which witnesses were more worthy of credit and to give credit accordingly. The chancellor and this court have but the cold and unresponsive record upon which to come to a conclusion as to the credibility of the several witnesses, and a chancellor as well as a court of review should be slow in disturbing the conclusions of the master upon the facts, unless it can be said that the master's conclusions were clearly contrary to the probative force of the evidence.

In the instant case in many vital particulars there was a contradiction between the testimony of complainant and the defendants, and it was therefore the burden and the master's duty to determine to which witnesses he would accord the greater credit, and it certainly cannot be said from this record that the findings of the master on the crucial and decisive points in the case are not supported by the believable evidence, or that the master's findings are manifestly contrary to the probative force of the evidence. It is clear that defendants designedly deceived complainant in regard to the wrecking of the building and making the excavation for the erection of the contemplated structure without giving complainant either notice or tendering the sum of $15,000, to which complainant was entitled under the terms of the rider in the trust deed, and it is quite apparent that defendants by their conduct designedly kept their actions in this regard secret from the complainant and that the complainant learned of the conduct of defendants in this regard incidentally from a third party, a stranger to the controversy; that complainant did nothing whatever to mislead defendants to do the things which they did contrary to the covenant in the trust deed, and that complainant is not estopped by any act of his from enforcing both in spirit and in law the conditions of the trust deed. *De Proft v. Heydecker,* 297 Ill. 541; *Powers v. Wells,* 244 Ill. 558. There was no act done by complainant which would work an estoppel *in pais. Noble v. Chrisman,* 88 Ill. 186; *First Lutheran Church of Pontiac v. Rooks Creek Evangelical Lutheran Church,* 316 Ill. 196, in which the court said:

"An estoppel by matters *in pais* may be defined as an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced to change his position by the voluntary, intelligent action of the party against whom it is alleged. His action must

have been of a character to result in substantial prejudice were he not permitted to rely on the estoppel.''

There is no conduct imputable to complainant in this record which would under the foregoing definition work an estoppel *in pais*.

Furthermore, the trust deed with its accompanying rider is one document, and with all its covenants and conditions must be construed as such. It is patent from all the proofs on the subject that the defendants were exerting themselves to evade their obligation of paying $15,000 to complainant before wrecking the old building and excavating for the new, and, aside from the testimony of defendants regarding some verbal conversations with complainant, every act of defendants points to this one solution of their conduct.

It is the duty of a court of equity to enforce the contract made by the parties and not to depart therefrom, unless good and sufficient reason clearly appears from the proofs for so doing, and it is without contradiction that the defendants as a condition precedent to wrecking the building and excavating the land for the purpose of erecting thereon a new building were by their contract obligated to pay the sum of $15,000. That agreement was deliberately entered into and it is the duty of courts of chancery to enforce such contracts when applied to for that purpose. These covenants the defendants deliberately violated and for so doing they cannot expect to find any favor in a court of conscience.

For the failure of defendants to pay the $15,000 in apt time, as above mentioned, complainant had a right under the terms of the trust deed to accelerate the payment of the indebtedness in the manner in which he did. *Brown v. McKay,* 151 Ill. 315.

In *Curran v. Houston,* 201 Ill. 442, the court said:

''Parties may by contract make the time, given for payment of the principal debt, depend upon the prompt payment of the several installments of interest when

due, providing, either in the note, or mortgage secúring the same, that a failure to make payment of any installment of interest shall work a forfeiture of the credit, and make the entire debt due at once. Such stipulation, that the whole sum shall become due and payable upon default in the payment of the principal or interest is universally held to be legal and valid. It is not objectionable as being in the nature of a penalty or forfeiture, but will be sustained in equity as well as at law. *(Hoodless v. Reid,* 112 Ill. 105; 1 Jones on Mortgages,—5th ed.—sec. 76; 1 Pomeroy's Eq. Jur., sec. 439; *Kramer v. Rebnan,* 9 Iowa, 114; *Ottawa Northern Plank Road Co. v. Murray,* 15 Ill. 336.)''

This case is equally applicable to the instant case. The right to accelerate payment of the indebtedness given by the trust deed, and of which complainant availed, is neither penalty nor forfeiture. It is an attempt to collect a debt which has matured under the terms and conditions of the contract between the parties, viz., the trust deed. *King v. King,* 215 Ill. 100; *Robinson v. Miller,* 317 Ill. 501.

Defendants attack the validity of the notice accelerating the payment of the debt and declaring the whole of it due for breach of the provision of the trust deed regarding the payment of the $15,000 before wrecking the building and excavating for the new structure for the reason, as they argue that the notice was not signed by complainant personally, but by his attorneys for him. The object of a notice is that the parties notified shall receive it and know of the demand therein made. The defendants do not deny they received such notice on September 27, 1927. The evidence shows without contradiction that the attorneys signing the notice for complainant did so with authority from complainant so to do, and that thereafter complainant ratified the action of his attorneys in this regard. Therefore the notice was effective for the

purpose for which it was given, and furthermore no one but complainant under the circumstances of this case could challenge the authority of complainant's attorneys to sign the notice with his name, and furthermore we agree with the master that the making out and signing of the notice by complainant's attorneys was within the scope of their authority. The act of the agent when authorized, or if unauthorized subsequently ratified, becomes the act of the principal and binding upon all parties concerned.

For the errors indicated in this opinion the decree of the circuit court is reversed and the cause is remanded to that court with directions to approve the master's report, and to enter a decree of foreclosure in accordance with the master's findings and recommendations in that report.

*Reversed and remanded with directions.*

WILSON and TAYLOR, JJ., concur.